JUDGE ROBERTSON
delivered the opinion op the court.
For the sole purpose of extending the limits of Newport the Legislature of Kentucky passed an act, on the 16th of February, 1867, entitled “An act to amend the charter of the city of Newport.” The extended limits, as defined, by the act, include about twenty acres of land of the estate of General James Taylor, deceased; about five acres known as Walker’s subdivision; and nearly six acres owned by the appellants, Alexander Swift & Co., of Cincinnati, and occupied and used by them for manufacturing iron and steel, which they generally sold at their mercantile establishment kept in the latter city for the sale of such fabrics.
Under a city ordinance of March, 1867, for assessing the real and personal estate within the extended limits; and an ordinance of May, 1867, levying a tax thereon for that fiscal year, commencing 1st of January, 1867; the appellants were *40 taxed $875 for their real estate and $175 for their “stock on hand/’ the aggregate of which ($1,050) was exacted under protest.
This action for restitution was dismissed on final trial; and the appellants, appealing from that judgment, urge the following objections to the legality of the exaction:
1. There was no constitutional power to include their ground and factory within the city limits without their consent and without notice.
2. The title does not sufficiently designate the specific object and effect of the enactment, which is therefore void. -
3. The property assessed and taxed, not being liable on the 1st of January, 1867, was exempt for that fiscal year.
4. Under the charter and ordinance, the personal property, as assessed and taxed, was not liable thereto at all.
These positions will be considered in their numercial order.
1. The organic limitation on the eminent domain in Kentucky, by the fundamental guaranty of private property against appropriation to public use without the owners consent or just compensation, is not considered as violated by a legislative dedication of land to the establishment of a town. Such mere dedication does not take the land from the owner nor impair his use of it. The land will still be his as before, unless it shall be subdivided into lots, streets, and alleys, which can not be lawfully done without his consent, or payment to him of the value of the streets and alleys, and of the proceeds of the sale of lots. This practical construction of legislative power has become prescriptive in this state and other constitutional states of America; and the same principles apply to the extension of towns previously established. As in ordinary cases of taxation, in which the reciprocal benefits are deemed commensurable, so the subjection of land included in the town extension to the burden of a municipal tax is not considered an unlawful appropriation of private property to public use unless the legitimate *41 object of improving tbe town shall have been palpably perverted to the unauthorized purpose only of lessening the burden of taxation on the inhabitants, who will not be otherwise benefited by the extension.
The unquestionable power of extension in this case may have been, as charged, thus abused; but of this there is, in a conflict of facts no judicial certainty. On the contrary, we are inclined to the presumption that the motive for the extension was constitutional and proper; and, as before suggested, the extension itself can not affect either the business or property of the appellants, and nothing more except the tax has been yet done or attempted. Moreover, when legislative power is unquestionable, and the simple exercise of it discloses no unconstitutional end or aim, the judiciary should not impute one without indisputable proof from the nature of the case, and the total destitution of any presumption of a constitutional object. On this ground this court, in the case of Cheany v. Hoover, 9 B. Monroe, 330, sustained the extension of Hopkinsville, of more doubtful befittingness than the extension in this case.
A general statute (2 Stanton, 120) required notice to the appellants of the application to the legislature for the act of extension affecting their private property.
The failure to give the notice would have been a sufficient reason for withholding the enactment complained of as ex-pm-te, and legislative prudence would have refused to consider the subject of the application for want of notice. But mere indiscretion can not avoid a legislative act. One legislature can not control the conduct or limit the power of its successor except by an act operating as a binding contract.
The statute requiring notice is therefore only advisory and prudential, and being disregarded in this case was quoad hoe constructively repealed.
Consequently we can not adjudge the extension act in this case to be invalid, however imprudent it may have been.
*42 2. Nor can we adjudge it void on account of the imputed delusiveness or want of true significance of its title. As the charter of Newport neeessa/rily defined and fixed the boundary of the town, any legislative change of the chartered limits was an amendment of the charter. The act extending the limits is therefore an act amending the charter; and although “to extend the limits” would have been more specifically suggestive of the precise subject-matter, yet as the adopted title comprehends it, and can not mislead by pointing to any subject not embraced by the charter, the court would pervert the object of the constitution by adjudging the act void only because a more specific title might have been adopted. Such an anomalous provision of our constitution would operate mischievously if construed to avoid a statute on such ground of mere optimism in the title of the act.
We consider the title of the act in this case as sufficiently suggestive of the purpose of the enactment as contemplated by the spirit and aim of the constitution.
3. Neither the charter nor ordinance for assessment restricts taxable property to the commencement of the fiscal year; and the ordinance under which the appellants 'were assessed was not only passed nearly three months after the 1st of January, 1867, but contemplated the assessment for that year of property owned by the person assessed at the time of the assessment. Nor is there proof or presumption that a larger levy was made than the law and the exigencies of the case authorized.
We feel authorized to conclude that the tax of eight hundred and seventy-five dollars on the real estate of the appellants in Newport was neither illegal nor wrongfully exacted. But as to the tax of one hundred and seventy-five dollars on the personal property our conclusion is different.
, The ordinance did not authorize the assessment of the raw material of the appellants in Newport, as to the manufacture of which they were not “ merchants or traders,” but “ artificers ” *43 only. (4 Jacob’s Law Dictionary, 275; 3 Mon. 334; 6 J. J. Marsh. 543.)
The ordinance did not authorize the assessment of the unmanufactured stock, but only of the fabrics of “ merchants or traders ” in such articles. As to the unfabricated stock the tax was therefore illegal; and even the manufactured articles were not taxable, because they were destined for sale at the house in Cincinnati, and a few casual sales at the manufactory in Newport no more made the appellants merchants in Newport than if the same occasional sales had been made on the bank of the Ohio River in transitu to Cincinnati.
The tax of one hundred and severity-five dollars on the personalty was therefore illegally assessed and exacted. For this cause the judgment is reversed, and the cause remanded for judgment for restitution of one hundred and seventy-five dollars, with legal interest from the date of the payment thereof by the appellants.