CASE 79—PETITIONS EQUITY—JUNE 20.

# Briggs, Trustee, v. Town of Russellville.

# Town of Russellville v. Beall.

99  515
101  631

APPEALS FROM LOGAN CIRCUIT COURT.

1. TAXATION OF FARMING LANDS FOR MUNICIPAL PURPOSES.—Where
   farming lands have been brought into the city by an extension
   of its limits, the extension being made for the legitimate purposes
   of improving the town, and not for the unauthorized purpose only
   of lessening the burden of taxation on its inhabitants, considering
   the character and location of the property, its proximity to two
   railroad depots and shops, and to the business portion of the
   town, and the actual and prospective growth of the town, and the
   extension of the police jurisdiction of the town over the local-
   ity, and the benefits and advantages necessarily afforded and en-·
   joyed by the owners by reason of the very existence and presence
   of the municipal government, the property should be required to
   bear its proportion of the burden of municipal taxation, although
   the lands were never divided into lots or used as city property.

WILBUR F. BROWDER FOR BRIGGS AND BEALL.

1. There is not a street within one hundred and sixty-five yards of the
   inside lines of either the Briggs' or Beall property, and not a side-
   walk nearer than that; they have never sold any town lots at any
   price, and there are no town lots near either place, except a few
   negro cabins; the town government of Russellville has never ex-
   pended one cent for the benefit of either place in the form of po-
   lice protection, lighting, water facilities, streets, sidewalks, pass-
   ways, alleys, or any other improvement, benefit or advantage; and
   to tax this property for town purposes will be the taking of pri-
   vate property without compensation. (Trustees of Elkton v. Gill,
   94 Ky., 138.)

M. P. SLOSS OF COUNSEL ON SAME SIDE.

JAMES H. BOWDEN FOR THE TOWN OF RUSSELLVILLE.

1. The tax must be paid unless the court is able to say from the facts
   of the case that the obvious purpose of the extension of the town
   limits, or its evident effect, was spoliation; and in this case instead
   of being spoliation it was a simple act of justice to require these
   property holders who received more benefits and protection from
   the municipal government than many who were previous to the
   extension inside the corporate limits, to bear their proportion of
   the burden of taxation.

S. R. CREWDSON ON SAME SIDE.

1. When all the decisions of the Kentucky Courts on the question of
   taxing lands taken into a municipality by an extension of its
   limits, are considered together, they formulate the rule that the
   purpose or effect of the act of extension must be spoliation, other-
   wise the tax must be paid, which state of case does not exist in
   either of these cases. (Trustees of Elkton v. Gill, 14 Ky. L. R.,
   755; Cheaney v. Hooser, 9 B. M., 330; Swift v. City of Newport, 7
   Bush, 37.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT

These two cases originated in the Logan Circuit Court,
involve the same questions and stand upon substantially
the same state of facts, except as to the condition  use and

situation of the parcels of land, which it is claimed on the one hand and denied on the other are subject to municipal taxation. On that account they were heard together, both in the court below and in this court. The litigation is friendly, the object being to ascertain whether or not the town of Russellville has the right to impose taxes for municipal purposes on certain land belonging to the appellant, J. B. Briggs, trustee, in one case, and to the appellee, J. H. Beall, in the other case, which was originally brought within the limits of the town by an act of the General Assembly, entitled "An act to extend and define the corporate limits of the town of Russellville, authorize the election of a police judge and provide a sinking fund for said town," approved March 12, 1869. (Session Acts 1869, vol. 2, p. 236.)

Previous to the passage of said act the boundary of the town was in a very irregular and unsatisfactory shape, and while in 1869 it was a thrifty, though quiet town, having a population of near two thousand souls, with a reasonable prospect of growth and of steady improvement, having the advantage of one railroad, with the prospect of the early construction of another, the main object of the extension of the limits seems to have been to correct the irregular shape of the lines defining the limits of the town and at the same time to extend the jurisdiction of the municipal government over a considerable territory claimed to be actually suburban, although not within the lawful limits of the town. This the act accomplished by describing a perfect square of territory, each of the four sides extending four hundred and ten poles, with the county courthouse and public square in the center.

By a previous act, entitled "An act to amend the charter of the town of Russellville," approved March 5, 1868 (Session

Briggs, Trustee, v. Town of Russellville.

Acts 1867-8, vol. 2, p. 219), the chairman and board of trustees of the town were authorized and empowered to assess and collect annually an *ad valorem* tax "of not exceeding fifty cents on the one hundred dollars worth of real and personal estate within the corporate limits of said town, and a poll-tax of not exceeding two dollars" on each titheable inhabitant of the town, for municipal purposes. Subsequently another act was passed, entitled "An act to amend and reduce into one the acts relating to the town of Russellville," approved May 1, 1880 (Session Acts 1879, vol. 2, p. 874), which was substantially a new charter, and under which the municipal affairs of the town were conducted until the passage of the act for the government of towns of the fifth class, approved July 3, 1893, to which class the town of Russellville now belongs.

By the act of 1880 the boundary of the town was continued as fixed by the act of 1869, and the municipal authorities were empowered to assess and collect taxes for municipal purposes annually upon all of the real and other property, in the town, as of the 10th day of January, upon a list of the "taxable inhabitants and owners of property in said town," and the marshal of the town was invested with "all the powers and authority within the town of Russellville to collect the town tax as sheriffs have in collecting the State tax and county revenue."

Notwithstanding the ample power of taxation thus conferred on the municipal authorities to assess and collect taxes on their property within the corporate limits of the town, no effort was made by the said authorities to assess or levy or collect from the appellant, Briggs, and the appellee, Beall, taxes upon their land which was brought into the limits of the town by the act of 1869, and afterwards, by the

act of 1880, until the efforts made for that purpose, which furnished the occasion for the present litigation.

As we take it, the taxes now involved were assessed in 1893, under the authority of acts in force previous to the passage of the said act of July 3, 1893. Action was instituted by each of the parties seeking to enjoin the town and the collector of the town tax from proceeding to collect taxes, which had been assessed by the municipal authorities on their said respective parcels of land within the limits of the town.

The issues having been made up in each case, in the case of the appellant, Briggs, the court adjudged, in substance, that his land was lawfully assessed, and that he was liable for the tax, and his petition was dismissed. But in the case of the appellee, Beall, the court adjudged, in brief, that his land was not lawfully assessed or subject to the tax and that he was not liable therefor, and the municipal authorities were perpetually enjoined from proceeding to collect the tax that they were then seeking to collect from him on his said land. These appeals are prosecuted to reverse the judgment in each case.

In the case of Briggs, trustee, it appears that he was living with his family upon twelve acres of land that were included within the limits of the town by the acts of 1869 and 1880, which have been referred to, and that the dwelling house and all other improvements were erected thereon in 1872. The track of the Louisville & Nashville Railroad lies in front of this ground and is the south boundary of it. We do not deem it necessary to go into lengthy detail of the facts material, especially in the Briggs' case. It is sufficient to say that the facts show that, although there was no public street or alley or sidewalk contiguous to his ground,

he and his family had convenient access to the public streets of the town by a driveway out of his lawn across the said railroad track, and thence across a meadow, in which Mr. Briggs had an interest, to the "Hopkinsville pike," laid down on the map of the town as "Hopkinsville street," which leads to the public square and the principal business part of the town, and which is a prolongation of the main center street in the original boundary. His ground is thirty-two poles from the passenger depot of the said railroad, at which is the nearest sidewalk. The same may be said concerning the land of appellee, Beall. Briggs' residence is also something more than one thousand feet from the electric light plant which supplied the town, and from which his residence was supplied, over a line erected at his own expense, with light, which was the nearest point in the business part of town to his house. He had a number of tenement houses situated south of the said railroad track, and somewhat nearer to his ground than the electric light plant. The facts show, further, that his ground was not divided up into lots, but that it constituted one lot upon which, with ample means, he had erected a splendid urban residence, where he and his family were in a position to enjoy and had the privilege of enjoying if they chose to avail themselves of it, all of the advantages and conveniences which were to be afforded by or derived from the presence and energy of the municipal government not only for comfort but for protection as well.

Appellee Beall was the owner of one hundred and eighty acres of land, situated on the western and northwestern boundary of the town, as established by the act of 1869, but all of his land, up to the commencement of his action, had always been used as farming lands, and only seventy-seven and one-

fourth acres of it were included in the said town boundary, through which, as shown on the map of the town, the Owensboro & Nashville railroad track runs from north to south. No part of this land had ever been divided into lots since the act of 1869. His residence was on that part of his farm that lay outside of the limits of the town and the approach to it was from the "Hopkinsville pike," and from a point thereon beyond the west line of the town boundary. That part of his land within the town boundary, as it appears from the map of the town, is about equally divided by the track or line of the Owensboro & Nashville railroad, but no streets or alleys had been laid out through any part of it, but that part of it east of said railroad is situated on the "Greenville pike," which is a prolongation northward of Main street, and is laid down on the map as "Greenville street," which the municipal authorities in 1882 and since improved at considerable expense for some distance out and in front of Beall's land, but just how far or to what point the record does not show with certainty, but probably to a point nearly half way the length of his line fronting on said street or pike. Along this street and on both sides of it and adjoining Beall's land on the west side, there are several houses, which were occupied mostly by colored persons, erected on lots which were originally a part of the tract in question, but they were laid off and sold prior to 1869. The occupants of said houses used the said street as their only way of ingress and egress to the premises, and appellee Beall used it also when going to and from that part of his land which he entered through a gate opening on the said street or pike. That part of this parcel of land lying between the line of the O. & N. railroad and "Greenville street" is wet but good meadow land, and water rises on and flows from it under a culvert constructed

across the said street at the expense of the town. There is an area of thirty-four acres of land between appellee Beall's land and the business part of the town, upon which there were not any improved lots except that of appellant Briggs. Appellee Beall had never voted for town officers or held any office in said town, but was engaged in mercantile and other business in the town, and owned other property therein. The lands of both Briggs and Beall, the taxes on which are involved in this litigation, are in the vicinity of the passenger and freight depots of the L. & N. railroad and the shops of the O. & N. railroad, as shown by the map of the town, but they are situated on the side of the line or track of the former road opposite to them which has to be crossed in passing from their lands to the business part of the town, the courthouse and the public square.

The foregoing statement contains the principal facts that are material to the questions raised in the two cases. It is contended by counsel for the appellant, Briggs, and the appellee, Beall, that neither parcel of ground was subject to municipal taxation, briefly because it is not urban property, and had never been used as such, or divided into lots; that the owners had never consented to the extension of the boundary of the town so as to include their land within the town limits; that they had never received any benefits from the municipal government, or consented to be taxed by it; and that to compel them to pay taxes on their said lands to the town for municipal purposes would be the taking of private property without any compensation. On the other hand it is contended by counsel for the town that the situation of the two properties is such, with reference to the streets of the town, and with reference to other houses and lots within the limits that are subject to municipal burdens,

as to make it proper and right that they should be subject to their fair proportion of these burdens, which are necessary to the maintenance of municipal government for the benefit and convenience of the inhabitants of the town, and for the preservation of public order.

Numerous cases of a character similar to these cases, and in which the same questions were raised, have been decided by this court, and in no such case has it been held that the General Assembly did not have the constitutional power to fix the territorial limits of municipal corporations, either by acts of original incorporation or by subsequent acts extending their boundary lines. We do not understand counsel here to deny that the General Assembly had the constitutional authority to pass the acts of 1869 and 1880, by which the limits of the town of Russellville were extended. Nor do we understand counsel to hold that the municipal power or authority within the limits of the town as defined by those acts is restricted, except in respect of the power to tax the added territory. There were other purposes for which the General Assembly had the constitutional power to extend the jurisdiction of municipal government over territory contiguous to a town or city by extending its limits besides that of taxation. This might be done in any case in anticipation of the future growth of the town or city for the purposes of police protection and the like.

Such an exercise of legislative power was not violative of the constitutional guaranty of private property to the owners, because the land was still their own and could not be taken or appropriated for any public use, such as for streets or alleys, without their consent or without just compensation therefor. (Cheaney v. Hooser, 9 B. Mon., 330; Swift v. City of Newport, 7 Bush, 37.)

It will be found on investigation, we think, that in most of the States the courts will not interfere in such cases to relieve property owners from taxation by the municipal authorities, because municipal government being an important part of the governmental machinery of the State, it is the peculiar province of the legislative department—the law-making power—to define or provide a method of defining the limits of municipal corporations, and to clothe them with the powers of local government, and that the propriety of legislative action in this regard may not be questioned. In this State, however, as well as in several other States, it has long been the established doctrine that the courts will relieve against the burden of municipal taxation, following the extension of the boundary lines of a town or city, in cases where "the legitimate object of improving the town" has been "palpably perverted to the unauthorized purpose only of lessening the burden of taxation on the inhabitants, who will not be otherwise benefited by the extension." (Swift v. Newport, *supra*.)

In the case of Board of Trustees of Elkton v. Gill, 94 Ky., 138, following Cheaney v. Hooser, *supra*, and Maltus v. Shields, 2 Met., 553, the doctrine is stated in the following language: "The protection afforded to, and advantages received by the citizen from a municipal government are, in the meaning of the Constitution, just compensation for taxation imposed in order to maintain it; and local taxation authorized by law can not be deemed taking private property without just compensation unless it is palpable that persons or their property are subjected to such burden for the benefit of others for purposes in which they have no interest, and to which they are, therefore, not bound to contribute.

In that case a parcel of six acres of land, embracing the

residence and lawn of the owner, which was within the limits of the town, the land being a part of a tract containing forty-six acres, which was used for agricultural purposes, the part including the residence being adjacent to two streets of the town was held to be subject to taxation by the town.

In Maltus v. Shields, it was held that a lot of about nine acres in the town of West Covington, upon which the owner resided and part of which was in cultivation and part containing evergreens and shrubs and a large number of fruit trees, was constitutionally subject to taxation for municipal purposes.

In the case of Sharp's ex'or v. Dunnavan, 17 B. Mon., 223, it was held that where a town is extended by improvement, so as to give those living adjacent to the town boundary all the advantages which the citizens enjoy from the local government of the town, the legislature had the constitutional power to extend the limits of the town and subject the owners of the property within the extension to taxation for town purposes, and that the legislative discretion in the location of the lines of the extension could not be questioned or controlled by the court.

In that case thirty-four acres of land, including the residence of the owner, being a part of a tract of one hundred and forty acres which were used for agricultural purposes only, were brought within the limits of the town by the legislative act. The owner's residence was situated twenty-five poles from the original boundary of the town, and one hundred and fifty-five poles from the center of the business part of the town, and near enough to enjoy the advantages of schools, churches and the business of the town. This case and that of Cheaney v. Hooser arose under the act of 1846,

extending the boundaries of the town of Hopkinsville.

Another case, that of Stites v. Dunnavan (MS. opinion), originated under the same act, in which it was decided that the land of the owner that was brought within the limits of the town by the said act, containing twenty-two acres and used as a residence and for pasturing and other agricultural purposes, was liable to municipal taxation.

The foregoing references are sufficient to show the doctrine that has prevailed in this State upon this question, and the manner in which it has been applied.    Applying it to these two cases we find that the facts exhibited by the records before us, fairly viewed, do not make out a case that would authorize the interference of the court in behalf of either appellant Briggs or appellee Beall.

Considering the character and location of their property, its proximity to the two railroads, their depots and shops, running through and located in the town, and to the business portion of the town, the actual and prospective growth of the town, and the propriety under existing conditions of extending the police jurisdiction of the town over the locality, and the benefits and advantages necessarily afforded to and enjoyed by them by reason of the very existence and presence of the municipal government, in common with other citizens and property owners on whom the burden of maintaining it had been cast, it was, in our opinion, reasonable and just to require them and their property to bear a due proportion of the burden.

By forbearing for so many years to assess their property, it is manifest that the municipal authorities were not seeking to foster private interests or to lighten the burden of other taxpayers by extending the boundaries of the town, and when at last they did attempt to subject this property

Briggs, Trustee, v. Town of Russellville.

to taxation it was under circumstances and conditions that showed that these parties were to be equal sharers with every other property owner in the town of the benefits of the municipal government.

The taxes involved in these cases having been levied and assessed under laws existing before the passage of the act of July 3, 1893, providing for the government of towns of the fifth class, it is not necessary to pass upon any question that might be raised under any of the provisions of that act bearing upon the question of municipal taxation; nor is it necessary for us to determine the effect of the provisions of our present Constitution, requiring that taxes shall be uniform upon all property subject to taxation "within the territorial limits of the authority levying the tax" and prohibiting the exemption from taxation of any property except such as is exempted by the Constitution. (Copeland v. City of St. Joseph, (Mo.), 29 S. W. Rep., 281.)

It is only necessary to say that under the provisions of the Constitution all property not exempted by that instrument is required to be "assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale." This plain requirement will prevent exorbitant and arbitrary valuations, and placing more than an equal and just proportion of the public burdens on any tax payer.

Finding no error in the judgment in the case of Briggs, trustee, the judgment is affirmed; but for the reasons given the judgment in the case of appellee Beall is reversed. It is conceded by counsel for the town that only so much of his property as lies between the O. & N. railroad and Greenville "street" or "pike" ought to be subjected to taxation in this proceeding, and the cause is accordingly remanded with directions to so adjudge.