## Asher v. City of Pineville.

(Decided November 18, 1910.)

## Appeal from Bell Circuit Court.

1. Taxation of Omitted Property for Municipal Purposes.—A city of the fourth class may under section 3542 of the Kentucky Statutes assess restrospectively property that has been omitted from assessment.

2. Mistaken Belief that Property Is Not Within the City Does Not Work Estoppel.—The fact that the city authorities were under the mistaken impression that a residence was outside the city limits and for this reason did not assess it for taxation, did not estop the city from assessing it as omitted property when it discovered that the residence was in fact within the city limits.

3. Uniform Taxation.—The same rate of taxation must be levied upon all real and personal property within the limits of a city, without reference to its location, or whether it derives much or little benefit from streets, lights, police and fire protection and other municipal advantages.

4. Burden on Taxpayer to Show Illegality of Tax.—When a taxpayer resists the collection of taxes, he must point out in his pleading the particular grounds relied on and establish their existence by evidence. The city is not required to introduce any evidence until the taxpayer has made out a case that will overcome the legal presumption that the proceedings by a city or taxing officer are regular. And this rule applies to an attack on the validity of a tax upon the ground that it exceeds the constitutional limit.

5. Sufficiency of Notice and Assessment.—A resident of the city in September 1906 sold real estate under a contract providing that if a stipulated amount was paid on November 15th, 1906, that the contract should be binding, and the purchaser become bound to pay $100,000.00, for which he was to execute five notes for $20,000.00 each. The purchaser paid the amount specified on November 15th, and the $100,000.00 was properly assessed against the vender, although the notes were not in fact executed until a few days after the assessing period.

EDELEN & DAVIS for appellant.

METCALF & JEFFRIES and JAMES G. ROLLINS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant Asher to enjoin the appellee city from selling property levied upon by it to pay taxes due by appellant to the city. The taxes attempted to be collected were assessed for the years 1905-6-7. He averred in the petition that the assessment for the years mentioned, which were made by the city council, were made without any notice to him and were unauthorized and void. He especially assailed the assessment for the year 1907 of $100,000.00, placed as the value of promissory notes owned by him, and averred that this item was an attempt to assess an option which he had given to one Neild, or the Edgmont Coal Company, to buy certain lands belonging to him but situated outside the city limits of Pineville, when in fact the option was not exercised or the sale of the land under it consummated until May, 1907, while the assessment was made as of the 1st day of April, 1907. He stated that during the years 1905-6-7, "he considered himself a resident outside of the city limits of said city and was so regarded and treated by said city, and continued to reside outside of said city until March, 1908, when he removed from the city to the point where he now resides. That in the early part of 1908 the city caused the boundary lines to be run, and ascertained as it thought, and still thinks, that this plaintiff was within the city limits, and the boundary as run did show that he was, but this plaintiff did not, and does not, know that the location of said boundary as run by said defendant was or is correct." He further set out that the place at which he lived during the years 1905-6-7 was in a remote part of the city, and that in order to get from his residence into the business part of the city he was compelled to and did build a bridge, as well as a road, without assistance from the city; and that his property never had the benefit of city lights, police or fire protection, or any other conveniences or advantages ordinarily incident to city residents.

It appears that during the years named the city authorities were under the mistaken impression that appellant resided outside of the city, and for this reason his property was not assessed. But in the early part of

1908 an accurate survey of the boundary of the city was made, and it was ascertained that appellant's residence was and had been during the years mentioned within the corporate limits. That this survey was correct, and that in fact appellant was a resident of the city during the years in controversy, we have no doubt. As his residence was within the city limits it is not material so far as the question of taxation is concerned, in what part of the city it was located, or whether it was so situated as to derive substantial, or any, benefit from the streets, lights, police and fire protection, and other improvements and advantages of the city. It has been frequently held that all real and personal property within the city limits, without reference to its location, shall be taxed alike. The question of whether the property is in the center of the city, or in a remote part of it, or so located that it has the full benefit of all municipal improvements, or so situated that it derives practically no benefits, does not at all enter into the question of the rate of assessment or amount of tax that must be paid. A uniform rate is levied upon all property, and this rate is not to be increased or diminished according to the advantages that the property enjoys from the municipal government. Pence v. Board of Council of Frankfort, 101 Ky. 534; Board of Council of Frankfort v. Scott, 101 Ky. 615; Hughes v. Carl, et al., 106 Ky. 533.

Pineville is a city of the fourth class, and in section 3542 of the Kentucky Statutes, which is a part of the charter of fourth class cities, it is provided in part that:

"If, for any reason, any property subject to taxation has not been listed, the council may assess same; (but it) may not be taxed or listed for more than five years last past."

Under the authority of this section, on March 13, 1908, the council in writing notified the appellant to appear before it at the city hall in Pineville at 8 o'clock, p. m., on April 6, 1908, and show cause, if any he had, why the board of council should not assess his property for the years 1905-6-7 for city purposes, as the assessment of it for these years had been omitted by the city assessor. The notice set out in detail the property omitted from assessment for each of the years mentioned, and the value placed thereon by the council. In response to this notice, appellant and his attorney appeared before the council, but failing to make any adjustment of the matter the council proceeded to enact ordinances assess-

ing the omitted property for the years, mentioned. The ordinances described particularly the property assessed and the value of same. But, with the exception of one item of $100,000.00, which was not changed, the valuations were less than the values fixed in the notice given to appellant.

The proceedings of the council are very full, and show that every feature of the law relating to the assessment of omitted property was carefully observed.

Counsel for appellant in their brief assail the tax levies sought to be collected from appellant upon the ground that they were in excess of the constitutional limit permitted in cities of the fourth class, but there is no averment in the petition that these levies or any of them were in excess of the constitutional limit, nor is there any evidence to this effect. In Board of Council of the City of Frankfort v. Morgan, 110 S. W. 286, the court held that when a taxpayer resisted the collection of taxes upon the ground that the rate exceeded the constitutional limit, the burden was upon him to show this fact, saying:

"If a taxpayer desires to resist the collection of the taxes, he must not only point out in his pleading the particular grounds relied on, but he must establish their existence by proof. The city is not required to introduce any evidence until the taxpayer has made out a case that will overcome the legal presumption that the proceedings by the city and the taxing officers are regular. * * * If he fails in this, the city in attempting to enforce the collection of taxes will not be put to the necessity of showing affirmatively that the law was complied with in the levy."

After saying that the limitations upon the tax rate contained in the Constitution were mandatory, and could not be exceeded or evaded by the council or other taxing authority, we further said:

"But here, again, the taxpayer, who is assailing the tax, must prove the averments of his pleading. The presumption is that the council or authority levying the tax has not exceeded its power; and the taxpayer attacking the validity of the tax upon the ground that it exceeded the constitutional limitation, must point out in his pleading the grounds he relies upon, and sustain his contention by evidence."

This well-established principle in the law of taxation makes it unnecessary to further notice the argument of, counsel in reference to the levies being excessive. Nor can

it be maintained that the city is estopped from attempting to collect these omitted taxes because of a misapprehension on the part of the city authorities as to whether the residence of appellant was within or without the city limits. The mere fact that during the years mentioned the city authorities were under the impression that appellant's residence was outside of the city limits and for this reason he was not assessed or taxed, cannot deprive the city of the right to retrospectively assess and collect taxes for these years after it ascertained that his residence was within the city limits. If the mistake or neglect of taxing officials or municipal authorities could estop a city from assessing property or collecting taxes that should and would have been assessed except for neglect or mistake, the result would be that much property would entirely escape taxation, and great injustice would be done to property owners who were taxed, aside from the loss that would be sustained by the city. We think there can be no doubt that when property within the limits of a city for any reason is omitted from assessments, that it may in the proper time and manner be retrospectively assessed.

It is further insisted that the assessment of notes of the value of $100,000 for 1907 was fatally defective because the notice given to appellant to appear before the council to show cause why his property should not be assessed, did not sufficiently describe these notes. The notice specified several articles of property, naming them, that should have been assessed but were not, and the value of each, and among these is mentioned "Value of notes $100,000." We think this was amply sufficient to give appellant notice that an attempt would be made to assess notes held by him of the value of $100,000, and so in this particular the notice is not open to the objection urged against it. But, it is earnestly insisted that the assessment of this $100,000 worth of notes was erroneous, because at the time the assessment was made in April, 1907, the appellant did not own or have the notes sought to be assessed under this item. The facts concerning these notes are as follows: On the 15th of September, 1906, the appellant entered into a written contract with C. S. Neild, by which in consideration of $35 per acre he agreed to convey to Neild by general warranty deed certain described lands in Bell county. The contract provided that Neild should have the lands surveyed, and the acreage ascertained within sixty days next thereafter if

same could be done within that time, but if not he was to continue the surveying without intermission or delay until finished. It further stipulated that $2,500 of the purchase money was paid in cash, and that there was to be paid on the purchase money before November 15, 1906, an amount sufficient to leave then unpaid of the purchase money $100,000. But, should the acreage be not ascertained by November 15th, and the parties for this reason unable to determine the exact amount of the purchase money Neild was then to pay Asher on or before November 15th, $13,000, and when the acreage was certainly ascertained, five notes of $20,000 each were to be executed to Asher to represent the unpaid purchase money. The notes were to bear date of November 15th, 1906, and be payable respectively on January 1st, 1913, 1914, 1915, 1916 and 1917, and bear interest from date. The contract also provided that a deed in compliance with the contract should be executed by Asher on January 1, 1907, with a lien retained to secure the unpaid purchase money. It further stipulated that if the $13,000 was not paid by November 15th, the $2,500 paid in cash should thereby become forfeited and the contract null and void. It is shown that the $13,000 was paid on November 15th, 1906, that the notes mentioned were executed and a deed was made on May 10th, 1907, by Asher to the assignee of Neild. This deed recites that $15,000 of the purchase money had theretofore been paid, and the day the deed was made five notes for $20,000 each were executed according to the terms of the contract.

It will be observed that this contract provided that if the $13,000 was not paid on November 15th, that the $2,500 paid in cash should be forfeited to Asher and the contract become null and void. But the $13,000 was paid at the time mentioned, and when it was paid the optional feature of the contract ceased and it then became a binding obligation upon the parties to perform its conditions, and thereupon Neild became indebted to Asher in the sum of $100,000, which was to be evidenced by five notes for $20,000 each. The mere fact that the deed and the notes were not actually executed until May 1907, is unimportant, because when the assessment was made in April Asher was in fact the owner of an obligation evidencing his right to collect from Nield $100,000, and providing that notes should be executed for this amount. The execution of the notes merely changed the written evidence of the indebtedness, and that was all.

There is no reason why the judgment of the lower court dismissing the appellant's petition to enjoin the collection of the taxes should be disturbed, and it is affirmed.