## City of Highland Park v. Reker.

(Decided January 12, 1917.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Municipal Corporations—Ordinances—When Invalid.—Where a
city council in attempting to enact an ordinance, striking terri-
tory from its corporate boundary, failed to comply with the pro-
visions of section 3664, Kentucky Statutes, which statute sets
forth the steps required to be taken by a city council, the ordin-
ance is invalid.

2. Municipal Corporations—Ordinances—Parol Evidence.—A city
council can speak only by its records. Parol evidence cannot be
received to prove the enactment of an ordinance by a city council.

L. F. SPECKMAN for appellant.

L. D. GREENE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This is a prosecution in the name of the city of Highland Park against John Reker, under an ordinance to recover a fine of defendant, for retailing intoxicating liquors therein without having procured a license from the city to carry on such business. Reker defends upon the grounds that his saloon is not located within the city limits; that part of the corporation having theretofore, as he contends, been stricken therefrom. He was acquitted both in the police court and the Jefferson Circuit Court, criminal division, and the city appeals.

Highland Park, Jefferson county, Kentucky, is a city of the 6th class; its boundary was fixed by act of the General Assembly in 1890. In 1906 the city council undertook by the following ordinance, to strike certain territory from the east side of its limits:

"An ordinance fixing the eastern boundary line of the town of Highland Park, Kentucky:

"Whereas some question has arisen as to the correct eastern boundary line of the town of Highland Park;

"Now, therefore, to remove any doubt and to fix the said line, the Board of Trustees of the town of Highland Park, Kentucky, do ordain as follows:

"Section 1. That the limits of the town of Highland Park, Ky., on the entire eastern line thereof be and the same are hereby reduced so that the west side of Ash Bottom Road as it now exists, shall be the eastern boundary line of the town of Highland Park.

"Section 2. All ordinances in conflict with this ordinance are hereby repealed.

"Section 3. This ordinance shall take effect from and after its passage and publication.

"Approved September 15, 1906."

Again, on September 15th, 1913, by another ordinance, in exactly the same language, it is declared that the same territory on the east side, which was described in the previous ordinance, was stricken.

This ordinance fixes the limits of the city on the entire eastern line, at the "West side of Ash Bottom Road as it now exists." Early in 1916 a license tax on the sale of intoxicating liquors in the city of Highland Park was fixed by its ordinance at $300.00 per annum.

The appellee, defendant below, John Reker, operated a saloon or tavern on the east side of Ash Bottom Road and in the territory which by said ordinance was

attempted to be stricken from the corporation. Reker held a license from the county of Jefferson to operate his saloon, but he had procured no license from the city of Highland Park, contending that his place of business was beyond the city boundary, relying upon the two ordinances referred to above, but these are assailed by the city, on the grounds that they were not enacted according to the requirements of section 3664 of the Kentucky Statutes.

Therefore, the exact question for decision here, is: Did the ordinance of 1906 or the one of 1913, or the two together, meet the requirements of section 3664 of the Kentucky Statutes? If the provisions of this statute were followed, then this territory was stricken from the city and the defendant, Reker, would not be subject to pay the license tax claimed by the city, but if this ordinance was invalid for any reason, the territory was not stricken and the defendant, Reker, is liable to the city for a license tax on his saloon.

A careful examination of the record kept by the clerk of the council, fails to show any advertisement whatever of the ordinance, or that the final enactment of the ordinance was ever passed or entered, as required by section 3664, Kentucky Statutes. It is contended by appellee, however, that the advertisement was had and each step regularly taken, but that the clerk in making the orders, by oversight or inadvertence, failed to incorporate this in the records of the council, but that the city attorney and other city officials who attended the meetings of the council have testified that the ordinances mentioned were properly introduced and carried into enactment according to the provisions of said section, and that this cures the defect, if any there was, in the records of the proceedings, and renders the ordinance valid.

Can parol evidence be received to prove the steps taken or action had of such legislative body?

This court in numerous opinions involving this question, has held:

"A city council can only speak by its records. When its records are read and signed, it is the only evidence of the action taken by the council at that time. If in fact the council agreed to take any action which is not put upon the book and the book without such action is read, approved and signed, then there is no ordinance

which can affect the rights of a third person.'' Town of Mt. Pleasant v. Eversole, 96 S. W. 478.

In the case of Spalding v. City of Lebanon, 156 Ky. 37, it is said:

''If we were permitted to enlarge or restrict the record evidence by parol testimony, the entries in the journal would be uncertain and unreliable, and would fail to afford any evidence that could be depended upon to show the actual proceedings of a city council at its meetings.''

And quoting from Dunn v. City of Cadiz, 140 Ky. 217:

''Appellee's charter provides for the appointment of a city clerk for a term of two years (Ky. Stat., sec. 3619). It is made the duty of the city clerk to keep a true, full record of all of the proceedings of the city council (Ky. Stat., sec. 3627). The legislature, having provided appellee with a clerk, and having made it his duty to keep a true record of the proceedings of the general council, we conclude that the city of Cadiz can speak only by its records. Any other rule would be to substitute for the records, the uncertain memory of the witnesses.''

The city, through its legislative body, in attempting to strike the territory, enacted the ordinance defining the boundary on the east side of the town and the records kept by its clerk show this, but by section 3664, Kentucky Statutes, in order for this ordinance to take effect and to exclude this territory from the city, it was necessary that the proposed change in the city boundary ''be published in at least ten issues of a daily newspaper, in and having the largest circulation in the town, or, if there be no daily paper in the town, in at least four issues of a weekly newspaper, published in and having the largest circulation in the town . . . . or by posting copies of the ordinance for at least ten days, in four of the most public places in the town.''

Since the city council failed to keep a record of its proceedings showing that it carried out the provisions of section 3664, Kentucky Statutes, with reference to striking territory from its limits, and since the rule has long prevailed in this jurisdiction that parol evidence cannot be received to prove the enactment of an ordinance, and that a city council can speak only through its records, it follows that the existence of such ordi-

nance fails of proof. But had the clerk's records shown each step taken by the council to be regular, and it should appear as it does in this case, that no advertisement was had of the enactment of the ordinance as required by section 3664, Kentucky Statutes, then the ordinance would equally fail.

As is said in the City of Bardstown v. Hurst, 121 Ky. 119, section 3664, Kentucky Statutes, required three steps to be taken before contiguous territory can be stricken from the corporate boundary of a city:

"First, there must be an enactment of an ordinance defining accurately the territory to be annexed or stricken off; second, there must be a publication of such ordinance four times in a weekly newspaper in the city, if there is no daily paper published therein; third, in not less than thirty days after the enactment of the ordinance, defining accurately the territory to be annexed or stricken off, if the publication of same in at least four issues of a weekly newspaper has been made, and no petition of remonstrance is filed in the circuit court by one or more resident freeholders of the territory to be annexed or stricken off, within thirty days of the enactment of the first ordinance, the city council may, by ordinance, annex to or strike from the city limits the territory described in the first ordinance; and it shall, upon the enactment of the last ordinance, become a part of such city, or shall be stricken therefrom."

These provisions not having been fulfilled, the territory in which the defendant Reker's saloon was operated was not stricken from the city, but was, at the time of the issual of the warrant, under the ordinance within the corporate limits and subject to regulation by the city.

Defendant, Reker, further contends that the city, once having attempted to lop off the territory in which his business is conducted and having for ten years acquiesced therein and held out to the public including the defendant and other residents thereabout, that the west side of "Ash Bottom Road" constituted the extreme eastern boundary of the city, and the defendant and other inhabitants of the community having acted thereon, the city is estopped to say that its acts in attempting to pass the ordinance, and the ordinance itself, are void.

In some instances where a great time has elapsed or where for some reason the boundary is indefinite or uncertain, it has been held that the boundary generally recognized and acquiesced in by the corporation and the inhabitants is the true boundary, but this is not the case here. The time has neither been so long nor were the boundaries indefinite or uncertain.

The act of the legislature fixing the boundary of the city is as follows:

"All the lands embraced within a rectangle one mile wide, by one and three-fourths mile long, and whose center is a point on the Louisville & Nashville Railroad right-of-way, one-eighth of a mile southwardly from the station on said railroad known as Highland Park; the right of way of said railroad dividing said rectangle into two equal parts, the sides of which are parallel to the said railroad right-of-way."

This makes the boundary easy of ascertainment by anyone interested therein:

In Asher v. City of Pineville, 140 Ky. 670, the court said:

"The mere fact that during the years mentioned the city authorities were under the impression that appellant's residence was outside the city limits, and for this reason he was not assessed for tax, cannot deprive the city of the right to retrospectively assess and collect the taxes for these years after it ascertained that his residence was within the city limits. . . . . We think that there can be no doubt that when property within the limits of a city, for any reason, is omitted from assessment, that it may in the proper time and manner be retrospectively assessed."

From this we conclude that the city was not estopped by its act attempting to strike said territory from its limits or, by the lapse of time, from asserting its jurisdiction over the territory in question.

The appellant and defendant, John Reker, having been dismissed in the lower court, the judgment is reversed and remanded for a new trial consistent with this opinion.