# Brown et al. v. Town of Dover.
# Manley et al. v. Same.

(Decided Sept. 30, 1938.)

D. BERNARD COUGHLIN for appellants.
M. HARGETT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The town of Dover in Mason County, Kentucky, is one of the sixth class, and located upon the Ohio River. The General Assembly of the Commonwealth by Chapter 1047 of the Acts of 1887-1888 (printed in Volume 3, page 87, of the Acts of that Session) extended the corporate limits of the town so as to include a farm containing sixty-three (63) acres now owned by Manley and others (defendants in the second styled action in the caption) and one containing seventy (70) acres now owned by Brown and others, defendants in the first action in the caption. Whether any part of either of them was ever platted for residence or business lots, or whether the entire farms at that time, and continuously since then, have been used strictly for agricultural purposes, does not appear anywhere in the record, although by a stipulation it is agreed that each of them "lies wholly within the boundary of the town of Dover as surveyed and platted by Louis H. Wolfe, March 23, 1904."

For the fiscal year, 1934, the town, through its proper officers, assessed the two tracts of land in the names of their respective owners, and these two actions were later filed by the latter to enjoin the collection of the assessments upon the grounds, as alleged in the petition that: (1) The Acts of 1887-1888, supra, by which the corporate limits of the town were attempted to be extended by the Legislature (a right it then possessed under our then prevailing Constitution), was illegal and void for uncertainty, and which alleged uncertainty consisted in what counsel claim is irreconcilable ambiguity or obscurity in the description of the annexed territory, as given and set out in that statute; and (2) that section 2 of the Act prescribed: "That it shall be the duty of the trustees of said town of Dover to cause the boundaries of said town, as established by this act, to be accurately surveyed, and durable marks of the boundary to be erected at the several corners thereof, and to cause a plat of the town to be made agreeably to said boundary, and have the same recorded in the clerk's office of the Mason County Court," and that the town never did that, in accordance with the Act, but only attempted to do so sixteen years thereafter, on March 23, 1934, after our present Constitution took ef-

fect. Defensive practice put in issue all questions attempted to be raised by the petitions, and after filing the stipulation, to which we have referred, the causes were submitted to the court, and it dismissed the petitions, to reverse which appellants in the two consolidated cases here prosecute this appeal.

The argument in support of ground (1) made by learned counsel for appellants, as we construe his brief, is, that the description in the special legislative Act extending the boundaries of the town of Dover (to which reference has been made), was and is so ambiguous and uncertain as to bring it within the general rule that such ambiguity will render the Act void, and he cites a number of cases supporting that universally recognized rule of statutory interpretation. If, therefore, his assumption of fact be true (i. e., that the descriptive language in contest is so ambiguous as to bring it within the rule), then the court erred in dismissing the petition; but on the contrary, if there be no such ambiguity or obscurity in the language of the Act as to leave it irretrievably uncertain as to what was meant (and which is necessary for the application of the rule), then all of the authorities cited by counsel are wholly irrelevant. It, therefore, becomes necessary to insert the legislative description of the annexed territory or rather its description of the entire corporate limits embracing the annexed territory. That description is:

"Beginning at a point in Ohio river directly north of the west end of the eastern abutment in the railroad bridge over Lee's creek; thence due south to the Dover and Tuckahoe Ridge pike; thence with the east line of said pike to the wooden bridge over said Lee's creek; thence west with said Lee's creek to Cordry and Porter's lines; thence west with Cordry and Porter's and Respess and Cordry's line to the mouth of the Fox's land; thence with said line to the east line of H. Bainum's farm; thence with Bainum's and Bennett's line north to the Ohio river; thence up said river to the beginning."

Learned counsel appears to discover the alleged fatal ambiguity or obscurity in that part of the description immediately following the corner or call of the wooden bridge over Lee's creek, saying: "thence west with said Lee's creek to Cordry and Porter's line; thence west with Cordry and Porter's and Respess and

Cordry's line to the mouth of the Fox's land; thence with said line to the east line of H. Bainum's farm; thence with Bainum's and Bennett's line north to the Ohio river; thence up said river to the beginning."

The only fault found with that alleged ambiguous and obscure descriptive language. is, as we gather from brief, that the particular lines of the owners of the farms mentioned are not stated, i. e., whether it is the north, east, west or south lines of the lands of the respective owners that the act referred to. We are unable to get any other criticism out of counsel's brief, and a painstaking reading of the description has failed to point out any other possible criticism creating any degree of confusion in the language employed. However, the one relied on by counsel cannot be given the effect contended for by him, since the presumption would be that the line of the respective farms referred to would be the one first reached in pursuing a direct course from the starting point, which would be the end of the last preceding call.

Moreover, counsel stipulated that the farms of his clients in the two actions were "located wholly within the boundary of the town of Dover, as described in chapter 1047 of the Acts of the General Assembly of the State of Kentucky, approved April 13, 1888." That stipulation presupposed a sufficiently valid description in that Act so as to embrace the farms of counsel's clients. We are, therefore, clearly of the opinion that ground (1) relied on to defeat the municipal tax attempted to be enjoined, is without merit.

In support of ground (2) it is argued in brief that the survey of the new boundary created by the Act of 1887-1888, extending the corporate limits (as provided for in section 2 of the Act), was and is a condition precedent to its taking effect, although the last section of the Act expressly said "This Act shall take effect from its passage." We do not agree with counsel in that contention. On the contrary, we conclude that the survey provided for was and is directory only and that no mandatory effect was intended to be given to it by the Legislature when it passed the Act. It was only intended to serve beneficially both the town and its inhabitants, so as to enable them to know precisely the location of the town's corporate limits. Counsel's argument, if carried to its logical conclusion, would require that in

making the survey "durable" stakes should be employed, and, furthermore, that the survey should be "accurately" done. Also, that a plat be made of the survey, and that it be duly recorded in the office of the county court clerk—all before the act takes effect. A failure to conform to any such requirements, if the language was mandatory, would postpone indefinitely the taking effect of the annexed territory to the town, although the Act making the annexation said that it should take effect immediately. We are clearly of the opinion that the making of the survey as prescribed by the Act was not in any sense a condition precedent to its taking effect.

It does not appear to be contended by learned counsel for plaintiffs that the express exemption of farm lands in the extending act from municipal taxation continued beyond the taking effect of our present Constitution with its section 170, wherein it is provided that all property within a governmental taxing unit shall be subject to taxation, except that which is expressly exempted in that section, and none of the property here involved comes within any of those exceptions.

Prior to the adoption of our present Constitution the exemption contained in the Act under consideration was valid, but this court in the cases of Ryan v. City of Central City, 54 S. W. 2, 21 Ky. Law Rep. 1070, and Briggs' Trustee v. Town of Russellville, 99 Ky. 515, 36 S. W. 558, 18 Ky. Law Rep. 389, 34 L. R. A. 193, held that all exemptions from municipal taxation in force prior to the taking effect of our present Constitution, and not embraced in the exemptions enumerated in its section 170, were repealed by that section after it became a part of our fundamental law.

Those cases were followed by the case of Board of Councilmen v. Scott, 101 Ky. 615, 42 S. W. 104, 19 Ky. Law Rep. 1068. And in the still later one of Campbell County v. Newport & Cincinnati Bridge Company, 112 Ky. 659, 66 S. W. 526, 23 Ky. Law Rep. 2056, the precise question was presented to this court, and we held that under the Schedule to our present Constitution, all prior consistent acts were preserved; but by section 170 such special tax exemption enactments, in force prior to the adoption of that Constitution, became and were repealed by the Constitution immediately upon its adoption.

We have continued to adhere to the interpretation as announced by those cases, and to hold that following the taking effect of our present Constitution, all property within municipalities was subject to municipal taxation, unless it came within the category of exemptions contained in section 170 of that instrument. See cases under Key Number System 966 (4) in Volume 14, West's Kentucky Digest under subject Municipal Corporations. The property here involved is not embraced in that list, as we have seen, and the court correctly held that it was not exempt. See, also, cases cited in notes to Constitution, section 171 in Baldwin's 1936 Revision of Carroll's Kentucky Statutes. No length of time wherein a taxing government unit omits to assess or collect taxes on property within its boundaries will operate to estop it from exercising its right to tax the property whenever it sees proper. Its protracted omission to assess non-exempt property will never, ipso facto, free it of the burden. Hence the delay in the authorities of the town of Dover to assess and levy a tax upon the lands of plaintiffs until the year 1934 is of no avail.

Wherefore, for the reasons stated, the judgments are affirmed.