# Mullins et al. v. Wilson et al.

March 15, 1940.

J. S. Sandusky, Judge.

Fritz Krueger, III, and Williams & Denny for appellants.

Luker & Begley for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The legislature of this commonwealth, by chapter 712 (a special act) volume II of the Session Acts of 1879-1880, incorporated the town of Livingston, in Rock-

castle county, Kentucky, in which it was enacted that the boundary limits of the town "shall include a circle the diameter of which shall be two miles in extent and the center of which shall be the depot of the Louisville & Nashville Railroad Company, where it is now located in said town." It provided for the election of municipal officers, including a board of trustees, at the regular election in 1880, and for their appointment until that election could be held. Other officers were also provided for. The act declared that the territory which it proposed to create into a municipality should thereafter be and become "a body politic and corporate under the name and style of the trustees of the town of Livingston, and may contract and be contracted with, sue and be sued, plead and be impleaded, in all of the courts of this commonwealth." Its Section 10, which is the last one except Section 11 (saying only when the act shall take effect) confers the power on the board of trustees to pass and enforce ordinances and by-laws and to suppress crimes, and for other purposes that may be necessary "to protect the quietude and safety of said town; and they shall have the right to pass all ordinances and by-laws for their government and the good government of the town, that they may deem necessary," etc., but there is no express language in the act conferring the right of the created municipality through its board of trustees to levy taxes, and which will hereinafter be considered at the appropriate place in this opinion.

After the taking effect of that act, and after the town had been organized thereunder, its board of trustees on the sole initiative of its members—and apparently without any authority therefor—reduced the boundary of the municipality as fixed in its chartering statute by preserving its circular boundary with the same center, but reduced the diameter of the circle to only one mile, or a half mile in every direction from the named center point, which was the then railroad depot of the Louisville & Nashville Railroad Company. All taxes levied and collected, and all other municipal functions thereafter performed—as alleged in the petition—were confined to only the reduced boundary, which it will be observed had the effect, if valid, to repeal so much of the statute as embraced territory within the municipality extending beyond the reduced boundary

made by the board of trustees, and which it is manifestly obvious was beyond any power or authority possessed by that body. Therefore, all of the outlying territory contiguous to the reduced boundary—but which was embraced by the statutory one—continued to be within the legally created municipality, the reduction of the boundary by the board of trustees to the contrary notwithstanding.

Such was the condition of affairs at the time of the taking effect of our present Constitution. Its Section 166 expressly prescribes that all charters of incorporated cities and towns in the commonwealth shall remain in existence with a continuance of the powers and jurisdiction therein conferred until the general assembly "shall provide by general laws for the government of towns and cities, and the officers and courts thereof; but not longer than four years from and after the first day of January, one thousand eight hundred and ninety-one, within which time the general assembly shall provide by general laws for the government of towns and cities," etc. Section 156 of the same constitution prescribes that cities and towns of the commonwealth "shall be divided into six classes" and designates the population of those that shall compose each class and itself puts all of them with a population of less than one thousand within the sixth class. It provides for the reclassification from time to time by the legislature as made necessary by increase of population, and the latter part of that section says: "The general assembly, by a general law, shall provide how towns may be organized, and enact laws for the government of such towns until the same are assigned to one or the other of the classes above named."

Following the taking effect of those sections as a part of our present constitution our legislature enacted Section 2740 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes classifying the cities of the commonwealth and naming the cities of each class down to and embracing those of the fifth class, and in the next section (2741) it was enacted that "all other incorporated cities and towns not named in this bill shall belong to the sixth class," with certain provisions not material to the question in hand. Those statutes were clearly enacted pursuant to the mandatory authority contained in Sec-

tion 156 of our constitution, and under its Section 166 all cities and towns theretofore incorporated by special act (which was the only method prior to our present constitution) became classified according to their population under newly enacted charters for the different classes of municipalities—the town of Livingston thereby automatically becoming a sixth class town under the newly enacted sixth class charter for all towns of that class.

In 1938 the trustees of the town of Livingston enacted an ordinance levying certain taxes on appellees who were the plaintiffs below, and composing the inhabitants of the territory which the earlier trustees of the town had rejected as a part of its inhabitants, though embraced by the special charter of 1879-1880 in the unauthorized manner supra. They later filed this action against the town and its proper officers to enjoin the collection of any such taxes upon the ground that they were not inhabitants of the city and could not be made to pay taxes for its support; and which contention is attempted to be sustained upon three grounds, (1) that the original incorporating statute of the town of Livingston was a special act and that our present charter of cities of the different classes are general acts, and it is contended that a special act can not be repealed by implication through the enactment of a general law; (2), if mistaken in ground (1), then the special charter of the town of Livingston never did have the effect to create it as a municipality because no express power of taxation was given to it by that charter, and it thereby not having been incorporated as a municipality by that act, and not having become such through the operation of any general law enacted for that purpose, since the taking effect of our present constitution the particular community forming the town of Livingston is not now, nor has it ever been, a municipality of any class in this commonwealth, and (3) that the long-discontinued use of the power and authority to tax plaintiffs—conceding such power originally existed—has resulted in an abandonment and nullification of that authority which may not now be resurrected and enforced.

The petition averred the facts and relied upon the grounds we have enumerated—as it was finally amended —to which defendants filed a general demurrer. The court on the hearing thereof overruled defendants' de-

murrer and upon their declining to plead, judgment was rendered granting the injunctive relief prayed for, from which defendants prosecute this appeal. We will brief ly dispose of the three grounds in the order named.

1. But little need be said in the discussion of ground (1), since the sections of our constitution, supra, together with the authorized enacted statutes pursuant thereto, automatically brought about the repeal of all specially enacted charters of municipalities in this commonwealth and substituted therefor the general enacted charter for the particular class of city to which the affected one belongs, and all of which was done pursuant to directions and commands contained in our constitution, against which no enacted rule of statutory construction may prevail, and for which reason this ground is wholly without merit.

2. The determination of ground (2) raises the general question as to the powers and authority of municipal corporations—not governed by constitutional or statutory inhibitive provisions—either expressly or impliedly created. The universal rule is that municipal corporations possess only such powers and authority as is expressly conferred upon them by their charters, or that which is necessarily conferred by implication in order to carry out that which is expressly given. That rule has been applied by this court in almost an unlimited number of cases, and it is approved by the text in 43 C. J. 189, Section 187, as the universal one followed by all courts, and which has the unqualified approval of Mr. Dillon in his standard work on Municipal Corporations, Volume 1, Section 89. In note 30 to the cited text of Corpus Juris there is cited a list of cases covering more than a page from different courts of the Union approving that rule, many of which were decided by this court. It, therefore, remains to be seen whether or not the special charter incorporating the town of Livingston, supra, though not expressly giving authority to its governmental agencies to levy and collect taxes, yet did so by necessary implication.

The enacted charter conferred upon the created body politic the right to sue and be sued, and to contract and be contracted with, the fruits of each of which rights could not be enforced as against the municipality in favor of the one suing or the one contracting with it,

unless the municipality possessed funds to meet its obligations, and we know of no legal method by which a municipality may acquire funds other than by taxation. Furthermore, the charter provided for the election and installation of certain officers, some of whom are required to execute bond, and it can not be contemplated that it was the purpose of the legislature that such officers should perform their services and be burdened with the duty of executing bond without receiving some sort of compensation—requiring funds to meet it. Lastly—and in addition to the foregoing—Section 10 of the special statutory charter authorized and empowered the Board of trustees of the town of Livingston to pass and enforce ordinances relating to certain named subjects and other within named classifications, and concludes by saying: "And they (board of trustees) shall have the right to pass all ordinances and by-laws for their own government and the good government of the town that they may deem necessary," etc. "The good government of the town" for the acquisition and enforcement of which the trustees might enact ordinances is difficult, if not impossible, of attainment without the enactment and enforcement of ordinances or local laws for the accomplishment of that end, the enforcement of which costs money, which the town possessed no means of obtaining except by taxation. It is, therefore, our conclusion that the attacked special charter of the town of Livingston in this case is not void or of no effect, as argued, and for which reason this ground should be and it is overruled.

3. The same question involved in ground (3) was disposed of by us adversely to contention of plaintiffs' counsel in the very recent case of Brown v. Town of Dover, 274 Ky. 692, 120 S. W. (2d) 225, 227. The property sought to be taxed by the town of Dover in that case consisted of two farms—one containing 63 acres and the other 70 acres—both of which had been legally taken into the corporate limits of the town by a special act of the legislature at its 1887-1888 session, appearing in Volume 3, page 87, of the session acts for those years; but they were not listed for taxation until 1934, when their respective owners sought to enjoin the collection of the taxes assessed for that year for the same reason now urged in this ground. We disallowed it for

reasons stated in that opinion as based upon prior cases therein cited and concluded our opinion with these statements: "No length of time wherein a taxing governmental unit omits to assess or collect taxes on property within its boundaries will operate to estop it from exercising its right to tax the property whenever it sees proper. Its protracted omission to assess non-exempt property will never, ipso facto, free it of the burden. Hence the delay in the authorities of the town of Dover to assess and levy a tax upon the lands of plaintiffs until the year 1934 is of no avail." Compare the text in 44 C. J. 1328, Section 4407, and the earlier domestic cases of Covington Gaslight Company v. City of Covington, 84 Ky. 94; Pence v. Board of Councilmen of Frankfort, 101 Ky. 534, 41 S. W. 1011, 19 Ky. Law Rep. 721; Hughes v. Carl, 106 Ky. 533, 50 S. W. 852, 21 Ky. Law Rep. 6, and Asher v. City of Pineville, 140 Ky. 670, 131 S. W. 512. Having reached the conclusions expressed, it follows that the court erred in overruling defendants' demurrer filed to the petition as amended, and in rendering the judgment appealed from.

Wherefore, it is reversed, with directions to set it aside and to sustain the demurrer, and for further proceedings not inconsistent with this opinion.