## City of Newport v. South Covington & Cincinnati Street Railway Company.

(Decided December 12, 1913).

## Appeal from Campbell Circuit Court.

1. **Taxation—Corporate Franchises—Double Taxation.**—The valuation of the franchise of a street railway company, for the purpose of assessment and taxation, being arrived at by taking the total value of the entire assets, tangible and intangible, of the corporation and deducting therefrom the value of its tangible property; where for any one year the valuation of the corporation's tangible property within a city for assessment and taxation by the city, exceeds that made of the same property by the county assessor, and the valuation of the latter is adopted by the State Board of Valuation and Assessment in assessing such franchise for taxation in such city, the railway company, where it had previously paid to the city the tax on its tangible property therein according to its valuation by the city assessor, is entitled to a credit on its city franchise tax for the amount of tax it paid on the excess of the city's valuation of its tangible property over that of the State Board, as otherwise it would, to the extent of such excess in the city's valuation of its tangible property, be subjected to double taxation.

2. **Taxation—Franchises.**—A franchise tax is not a license or occupation tax, but an ad valorem or property tax.

3. Taxation—Franchises—Correction of Apportionment.—Where, in apportioning the valuation of the franchise of a street railway company for the purpose of assessment and taxation by a city, the State Board of Valuation and Assessment adopts a lower valuation of the street railway company's tangible property, than that fixed by the city, it is unnecessary for the company to apply to the State Board to correct the apportionment, in order to obtain credit on its franchise tax to the city, by the amount of tax, in excess of what was due, it had already paid the city on its tangible property subject to taxation therein.

OTTO WOLFF for appellant.

MATT HEROLD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The State Board of Valuation and Assessment, looking to its taxation for the year 1911, fixed the value of the appellee, South Covington & Cincinnati Street Railway Company's franchise in the appellant, City of Newport, at $122,344. This valuation was certified by the Auditor of the State to the clerk of the Campbell County Court, and by the clerk to the appellant, city; whereupon, the latter made out the city's bill for the franchise tax, upon a levy of $1.40 per hundred dollars, amounting to $1,712.82, the payment of which was demanded of appellee.

It appears that in the same year the assessor of Campbell county had assessed, or fixed, the value of appellee's tangible property in the city of Newport at $330,060, and, by the city's assessor, the value of the same property was for the same year fixed at $366,900, which exceeded the county assessor's valuation $36,840; but the State Board, in arriving at the value of appellee's franchise in the city of Newport, deducted the valuation of appellee's tangible property, as fixed by the county assessor, from its total capitalization. In the meantime, and before the State Board fixed or certified the value of its franchise, appellee paid to the city the tax on its tangible property therein on the city assessor's valuation of $366,900; so, when the city demanded the tax of $1,712.82 on its franchise, it declined to pay same, but tendered to the city $1,197.08, this amount being the tax on its franchise in the city for 1911, as certified by the State Auditor, less $36,840, the excess of the city's valuation of its tangible property, above that made of it by the county assessor. The appellant refused to accept, in payment of appellee's franchise tax,

the $1,197.08 thus tendered by the latter, and brought against it this action to recover the $1,712.82 contained in the tax bill.

Appellee's answer set up the excess of the city's valuation of its tangible property over the amount deducted by the State Board; alleged the payment by it of the tax on its tangible property at the city's valuation, and the tender of $1,197.08 in satisfaction of the tax it claimed to owe the city on its franchise, which amount, upon the filing of the answer, it paid into court. A demurrer to the answer was filed, which the court overruled, and the city refusing to plead further, judgment, requiring it to accept the $1,197.08 tendered by appellee, was entered. The city, being dissatisfied with the judgment, has appealed.

The ruling of the circuit court was based upon the theory that to have compelled appellee to pay the tax bill of $1,712.82 demanded by the city, would have taxed it twice to the extent of $36,840, the excess of the city's valuation of its tangible property in the city over the State and county's valuation of the same property.

A railway company is one of the corporations that is required by section 4077, Kentucky Statutes, to annually pay a tax on its franchise to the State, and also a local tax thereon to the county, incorporated city, town or taxing district, where its franchise may be exercised; the State Board of Valuation and Assessment, composed of the Auditor, Treasurer and Secretary of State, being required to fix the value of such franchise, as provided in that and succeeding sections down to 4080, inclusive. Briefly stated, the corporation must, among other things, report to the State Auditor the facts upon which the valuation of its franchise is based. From these reports, the State Board capitalizes the total earning power of the corporation, say on a six per cent basis, and this capitalization, called the "capital stock" of the corporation, being arrived at, there must be deducted from it the assessed value of all tangible property of the corporation, and the remainder thus ascertained constitutes the value of its franchise subject to taxation. The entire capitalization must, and does, include all the property of the corporation, be it bonds, stock, real estate, notes, accounts, rails, power-house, cars, or any other property, tangible and intangible, and if the tangible property upon which the corporation pays taxes were not deducted from the total capitaliza-

tion, there would be double taxation, because this capitalization includes the very property (tangible) upon which the taxes are already paid; therefore, the assessed value of the tangible property is deducted from the gross or total capitalization and the remainder constitutes the value of the franchise. So, where the capitalization is fixed at $1,500,000, which includes tangible property assessed at $500,000, this would leave the value of the franchise $1,000,000. If the board deducted only $300,000, although the assessment is $500,000, the company would pay taxes on $1,700,000, or on $200,000 more than its total property is valued at.

As the statute does not provide for any report by the corporation of the assessed value of its tangible property, either as assessed by the county assessor or any municipal authority, but only of the amount, kind, where situated, assessed or liable for taxation, all it can do is to report where it is assessed or liable for taxation and give its fair cash value. So, the deduction of the assessed value of the tangible property from the total capitalization made by the State Board is based on the report of the county clerk to the State Auditor of the local assessment made of the tangible property; and the county clerk of Campbell county, in reporting the assessed value of appellee's tangible property, seems to have taken the assessment of its value as made by the assessor of the county, instead of that made by the assessor of the city of Newport. It is, therefore, apparent, that if the municipality assesses, as was done in this case, the tangible property, subject to taxation, higher than does the county assessor, and the assessment of the latter is used by the State Board in fixing the value of the franchise, it follows that the city's assessment increases the total or aggregate value of the company's capitalization or capital stock to that extent; and, had the State Board in this case deducted the higher assessment made by the city from the total capitalization, the value of the franchise would have been fixed at a lower amount than it was.

As appellee had already paid to the appellant city the tax on its tangible property as valued by the city assessor, if it had paid the tax of $1,712.82 demanded by the city upon its franchise, it would have been double taxation to the extent of $36,840, the excess of the city's assessment of its tangible property over the valuation given it by the State Board in fixing the value of its franchise. In this view of the matter, the $1,197.06 ten-

dered appellant by appellee was all the former was entitled to as a tax on the latter's franchise for the year 1911. A franchise tax is not a license or occupation tax, but simply an ad valorem or property tax; and to impose a tax on the capital stock of the corporation, and also upon the property in which its capital stock is invested would be double taxation and illegal. Our condemnation of double taxation is stated in Commonwealth v. Walsh's Trustee, 133 Ky., 103, as follows: "Throughout the whole scheme of taxation adopted by this State there is an evident purpose to avoid double taxation, not only in not taxing the same property twice in the same year for the same purpose, but, as well, in not taxing the same thing, in *whatever form,* twice in the same year for the same purpose. Double taxation is oppressive, and, where it is imposed upon some classes of property and not upon others, works an inequality which is fundamentally vicious."

The question here involved seems to have been directly settled in Owensboro Water Co. v. City of Owensboro, &c., 25 Rep., 2530. The action was brought to enjoin the city of Owensboro from selling the waterworks plant under a levy for franchise taxes for the years 1893 and 1894. The water company had previously brought another action against the city for water rents, which it asked to offset against the latter's claim for taxes. The actions were consolidated, the claim for water rents allowed and offset against the taxes, and judgment rendered against the water company for the taxes credited by the amount of the water rents, with direction to sell the waterworks plant for the amount of taxes thus left due the city. On the appeal, among other grounds urged for a reversal, was the claim that the city was not authorized to levy a franchise tax for 1893; that the water company was illegally charged with interest on the taxes due the city; and that to allow the entire tax claim of the latter would be doubly taxing the water company because of the valuation by the city of its tangible property for the year 1893 at a sum greater than that at which it was fixed by the State Board in valuing its franchise, upon which over-valuation the water company had paid the tax. With respect to the last contention, which presents the only question bearing on the instant case, we, in the opinion, said: "For one year the city valued the tangible property of the corporation at $15,000 more than it was assessed at by the State Board. As the water company has paid taxes on

this $15,000 in its tangible property, the amount should be deducted from the franchise tax for that year, as otherwise, it would pay to this extent twice on the same property.''

In City of Louisville v. Louisville Railway Co., 118 Ky., 534, the same principle, in effect, was recognized. In that case, the street railway company continued to pay the sum of $50 as a tax or license on each of its cars, under an ordinance or law enacted before the adoption of the present constitution and the enactment of the statutes thereunder, but no such tax was required by any law or ordinance enacted subsequent to the adoption of the new constitution. It was, however, held by us that, while the city was entitled to recover certain taxes imposed under the new law, the railway company was entitled to a credit for such payments of the $50 tax on each car as were made by it after the new law, which repealed the former law, became effective, and, although the opinion, in thus holding, does not use the term ''double taxation,'' it is patent that a contrary ruling would, in effect, have subjected the property of the railway company to double taxation.

Appellant relies upon Southern Ry. Co. v. Coulter, Auditor, 113 Ky., 657, as sustaining its contention that the credit allowed appellee by the circuit court on its franchise tax was not permissible. It does not appear that any such question was raised in that case. One of the questions decided therein was, that sections 4077 to 4081, Kentucky Statutes, which impose a tax on the franchise of railroad and other corporations to the State, also a local tax thereon to the various counties, cities, towns and taxing districts where such franchise is exercised, and provide that the State Board of Valuation and Assessment shall fix the value of the franchise for that purpose, were not unconstitutional. Another question decided was that the valuation of the franchise of each railroad corporation must be made by the State Board of Valuation and Assessment and not by the Railroad Commission. And yet another question, that though section 4081, Kentucky Statutes, provides that when the lines of a railroad corporation extend beyond the limits of the State, the franchise of such corporation ''shall be liable to taxation in each county, incorporated city, town or district through or into which said lines pass, or are operated, in the same proportion that the length of the line in such county, city or district bears to the whole length of line in the State, less the

value of any tangible property assessed or liable to assessment, in any such county, city, town or taxing district," the value of the entire tangible property having been deducted in arriving at the value of the franchise for the entire State, the value of the tangible property in each county and city is not to be again deducted in arriving at the local taxation. Other questions were also decided in the opinion, but the one last mentioned is the only question passed on that seems to be at all germane to the question of taxation involved in the case at bar, and it, as will readily be seen, does not sustain the proposition urged by appellant; for here, there was no second deduction of the value of the appellee's tangible property, but merely a ruling by the circuit court that appellee could only be taxed on its franchise, according to its value as fixed by the State Board of Valuation, by deducting from its entire capitalization the assessed value of its tangible property, as made by the assessor of Campbell county, credited by the tax it had previously paid to the city upon the excess of its valuation of such tangible property over that of the county assessor adopted by the State Board.

We are unable to agree with appellant's counsel that appellee should have applied to the State Board of Valuation and Assessment for a correction of the difference in the valuation of its tangible property, as made by the county assessor and that made by the assessor of the appellant city, in order to obtain a rectification thereof. It is contended by counsel that this application should have been made within the thirty days after appellee received notice of the tentative valuation of its franchise by the State Board. This contention disregards the fact that the tentative valuation is not the valuation of the franchise in any particular city, town or taxing district, but is the valuation of the entire or whole franchise, wherever exercised in this State, arrived at by deducting from the entire capitalization of the corporation the value of the whole of its tangible property. It is only in thirty days after the final determination of the value of the franchise is made, as provided by section 4083, that the State Auditor can certify to the respective county clerks the amount or portion of the whole franchise, for which the corporation is liable for taxation in the counties, cities, towns and taxing districts, respectively. It is patent, therefore, that there is no statutory provision for the State Board to consider anything affecting the value of a franchise in any

particular city, town or taxing district, apart from the value of the entire or whole franchise; nor any provision for the certification or apportionment provided, until thirty days after the valuation of the franchise becomes final. So, it is apparent that appellee could not complain to the State Board before the valuation became final, as it had no means of knowing what the apportionment or certification would be until the thirty days after the valuation became final.

We are likewise unable to see that the case of the Commonwealth v. C. & O. Ry. Co., 122 Ky., 283, cited by appellant's counsel, has any application to the question under consideration. That was a case in which the State Board simply omitted to apportion and certify the value of the railroad company's franchise in a turnpike taxing district; and there was an attempt on the part of the sheriff of the county to have the omitted franchise listed for taxation by proceedings in the county court, as in the case of other omitted property. But we held that the proceeding instituted by the sheriff was unauthorized, and that the State Board should have been mandamused by the taxing district to apportion and certify to it the value of the railroad company's franchise in the district, and furthermore, that this remedy was exclusive.

As, in our opinion, the judgment appealed from properly determined the rights of the parties, it is affirmed. Whole court sitting.