## Bosworth, Auditor, et al. v. Kentucky Highlands Railroad Company.

### Cases Nos. 26761, 26999, 28160, 28563.

(Decided March 28, 1919.)

Appeal from Franklin Circuit Court.

Taxation—Assessment of Franchise—Injunction—Pleading.—In an action to enjoin the Board of Valuation and Assessment from

assessing the franchise of a corporation at a sum greater than that fixed in the petition, a general demurrer confessed the truth of the allegations, and there being no other plea to the petition seeking the relief, and it stating a cause of action the demurrer was properly overruled and the relief prayed for properly granted.

CHARLES H. MORRIS, Attorney General, and JOHN C. DUFFY, Assistant Attorney General, for appellants.

T. L. EDELEN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

These four actions were instituted in the Franklin circuit court by the Kentucky Highlands Railroad Company to obtain injunctions against the Board of Valuation and Assessment and its members, restraining it and them from assessing its franchise and capital stock at greater sums than those fixed in the four petitions. The first action was brought on October 31, 1913, to enjoin Auditor Bosworth and the other members of the Board of Valuation and Assessment from fixing the value of its franchise at $473,755.00, or any sum in excess of $64,635.00, which the petition alleged was the fair cash value thereof. A general demurrer was interposed to the petition and, after hearing, was overruled, and the defendant Board of Valuation and Assessment declining to plead further, a decree was entered in favor of the plaintiff perpetually enjoining the board from fixing the franchise of the plaintiff company at any amount in excess of $125,000.00, and fixing said amount as the value of plaintiffs' franchise for the purposes of taxation for the year 1913. No objection was made to or exception taken or saved by either party to this judgment, which was entered January 28, 1916. As the alleged value of the franchise was only $64,635.00, and there was no answer or other response to the petition except the general demurrer, we are at a loss to understand how the court entered a judgment fixing the value of the franchise at $125,000.00, unless it was by agreement or consent of the parties, and this we are assured is the fact by appellee railroad company. If that be true, then this appeal should not have been prosecuted by the special attorney for the Commonwealth.

The second case was instituted July 24, 1914, and the allegations of the petition are in substance the same

as those in the first action, but this suit seeks to enjoin the board from making a final assessment of plaintiff's capital stock at $700,000.00, or any sum in excess of $125,000.00, which the petition avers is the actual cash value thereof. A general demurrer was also interposed to this petition and overruled, and the board again declining to plead further, a decree was entered in favor of the railroad company, enjoining the defendant Board of Valuation and Assessment from fixing the franchise of the plaintiff company at any amount in excess of $125,000.00, and that amount was adjudged to be the value of said franchise for the year 1914 for the purposes of taxation. No objection or exception was saved to this judgment by either party.

The third suit was commenced on June 19, 1915, and the prayer is for a perpetual injunction restraining the Board of Valuation and Assessment from fixing the value of its capital stock at $700,000.00, or any amount in excess of $125,000.00, which it alleges is the fair cash value of its franchise. While no general demurrer to the petition was offered or filed, the decree treats the proceedings as though one had been so filed and overruled, and the defendant board, for the third time, declining to answer or plead further a decree was entered granting the relief sought, and enjoining the board from fixing the valuation of the capital stock at any sum in excess of $175,000.00. No objection was made or exception saved to this judgment by appellants.

The fourth action was instituted on September 18, 1916, and is in substance the same as the other three. The prayer, however, asks an injunction, restraining the board from fixing the value of the capital stock of the railroad company at "$898,294.00, or any amount in excess of that which, deducting the value of its tangible property, will leave the value of its franchise at $175,000.00, which plaintiffs aver is in excess of the actual value of its franchise, but upon which plaintiff is willing for the assessment to be made." No demurrer or answer was filed by the board to this petition and the board, failing to plead, the petition was taken for confessed, and a decree entered in accordance with the prayer of the petition, fixing the value of the franchise at $175,000.00, and enjoining the board from fixing the value of the franchise at $898,294.00. The appellants objected and excepted to this judgment and prayed an

appeal to this court, which was granted. This is the only decree in the four to which objection was made or exceptions saved by appellants and the only one granting an appeal.

Appellee company has filed its written motion in each of said cases to dismiss the appeals on the ground that "the judgments rendered herein were rendered by consent of the appellee and the Honorable M. M. Logan, representing the appellants, who was then the duly qualified and acting Attorney General of the Commonwealth." It also filed a verified "answer to the appeal" in each case in which it says, "that although it may appear from the judgment herein that an exception was reserved by the defendants, said judgment was rendered with the full consent of the Honorable M. M. Logan, who was then the Attorney General of the Commonwealth of Kentucky, after a full hearing before the Franklin circuit court, and that afterwards this appeal was prosecuted by the Honorable John C. Duffy, styling himself the Special Assistant to the Attorney General, and without, as the appellee believes, being especially authorized therein by the Attorney General." The judgments in the first three cases appear to have been entered by consent of all parties. There is no objection or exception to the decrees, and no appeal asked or granted. Then, too, it appears that the amount at which the value of the franchise was fixed in the first suit was $125,000.00, whereas the allegations and prayer of the petition would have justified a judgment for only $64,635.00. From these facts we are persuaded that the judgment must have been entered by consent of the parties, although this is denied by special counsel for the Commonwealth, but we find no denial by Honorable M. M. Logan, who was Attorney General of the Commonwealth at the time and later chairman of the Tax Commission of the Commonwealth, and therefore, a party to this action.

Passing the motion to dismiss the appeals, and all other preliminary questions, we will consider only the main question in all of the cases: Did the petitions state causes of action? If they did, the general demurrers were properly overruled; if they did not, then the court erred to the prejudice of appellants in overruling the general demurrers. The petitions are almost identical, and what may be said of one may be said of all. Let us consider

the sufficiency of the allegations therein made, and determine whether causes of action were stated thereby. After manifesting its right to sue as a corporation, and its right to sue the defendants named, appellant alleged in each of the petitions that the Kentucky Highland Railway Company is a Kentucky corporation, and that it owns 15.88 miles of railroad track and certain equipment; that it operated at the times mentioned in the four petitions only 6.46 miles of said road, and the residue of said track was then, and had been at all times since its construction, held and operated by the Louisville & Nashville R. R. Company, and this last named concern had returned said part of plaintiff's track to the taxing authorities of Kentucky for taxation as a part of its system, and had paid all taxes thereon, and at the time of the institution of these actions had declared its liability for further taxes and was ready, able and willing to pay any additional tax due, if any, assessed on said mileage for franchise for the years named, and was in fact so assessed at each and all of the times mentioned in the petitions. The petitions also aver that the railroad begins at Cliffside, near Frankfort, in Franklin county, and extends to Versailles, in Woodford county, 4.21 miles being in Franklin county and the balance in Woodford county; that the company is capitalized at $250,000.00; that it has a bonded debt secured by mortgage upon its railroad from Frankfort to Millville of $250,000.00, which bonds become due in April, 1947; that it owes the Louisville & Nashville R. R. Co. a floating debt of $526,063.52; that the value of its tangible property did not exceed, for the years named, $76,245.00; that the fair value of its entire capital stock did not exceed for the years named $126,000.00; that the Board of Valuation and Assessment for the year 1913, proposed to fix the value of its capital stock at $500,000.00, and the value of its tangible property at $76.245.00, thus automatically fixing the value of its franchise at $423,755.00. For the years 1914, 1915 and 1916, in which the other suits were brought, the Board of Valuation and Assessment proposed to fix the value of the capital stock of appellee at $700,000.00, and the value of its tangible property at approximately $75,000.00, which would automatically fix the value of the franchise, and these facts were sufficiently alleged in the petitions. It is also alleged that the proposed assessment by the Board of Valuation and Assessment was tentative

only and not final; that while, through certain manipulations of the books of appellee, the net earnings of the road were made to appear as $44,258.77, the said sum was not, in truth and in fact, the exact net earnings of the road, but that said sum was subject to several deductions: (1) the interest upon the floating debt of $526,063.52; (2) a sinking fund for the extinguishment of the bonded debt; (3) such proportion of its franchise as the distance from Millville to Versailles bears to the total mileage. The Board of Valuation and Assessment fixed the value of its capital stock at $500,000.00 for 1913, and at $700,000.00 for the years 1914, 1915 and 1916; but notwithstanding appellee's protest the board sent to appellee a notice fixing the value of its capital stock at the sum aforesaid, and therefore fixing the value of the franchise by taking the value of the tangible property from the value fixed upon its capital stock, as aforesaid; that such assessment was greatly in excess of the real value of the capital stock and of the franchise, and was an assessment of at least four or five times the actual value of the stock and franchise, and that if such assessment be enforced, would result in spoliation of the property of the railroad by collection from it of taxes upon the franchise far in excess of its actual or fair value, which is alleged to be only $64,635.00 for the year 1913, $125,000.00 for the year 1914; $215,000.00 for the year 1915, and $175,000.00 for the year 1916; that the board is attempting to and will enforce the collection of taxes from appellee upon the valuation which it tentatively fixed upon its franchise, and unless enjoined and restrained from so doing, will certify said sums as the value of said franchise and capital stock of appellee, and cause taxes to be collected accordingly. The petitions also contained the necessary allegations concerning the application for injunction, and concluded with a prayer for a perpetual injunction, restraining the Board of Valuation and Assessment from fixing the value of the franchise and the value of the capital stock of appellee at sums greater than those named in the petitions. The general demurrers confessed the truth of the allegations and there being no traverse or other plea the petitions manifested a right on the part of the railroad to the relief sought.

It is the contention of appellant that the proper mode to arrive at the value of the franchise of the railroad

company is to find the difference between the net earnings and the gross earnings thereof, and capitalize that sum at six per cent, and the amount so found, less the value of the tangible property, will be the value of the franchise, subject 'to taxation. The railroad company insists that the mode adopted by this court in several cases is to find the value of the capital stock of the corporation, and from this take the value of the tangible property, and thus automatically fix the value of the franchise.

The value of the franchise of a domestic corporation is the difference between the fair cash value of the capital stock and the assessed value of its tangible property. To arrive at the value of the franchise the value of the tangible property must be deducted from the fair cash value of the capital stock of the concern. Kentucky Heating Co. v. City of Louisville, 174 Ky. 142.

By sections 4079 and 4080, Kentucky Statutes, the mode of finding and fixing the value of a franchise of a railroad, organized under the laws of this Commonwealth, is pointed out though not as clearly as it could or should have been. Reading these two sections together, we conceive the fair import to be, the Board of Valuation shall fix the value of the capital stock by capitalizing the net income derived from the business in this state and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this state, and the remainder thus found shall be the value of the corporate franchise subject to taxation.

The method of ascertaining and fixing the value of the franchise of appellee company is not set forth in the petitions nor was it necessary to do so, but the value of the franchise is definitely alleged at so many dollars for each year. The averments of the petition as to the value of the franchise are direct and certain. Uncontroverted these allegations were properly accepted by the trial court as the basis for the decrees entered. The petitions stated a cause of action entitling the railroad to the relief prayed, and the general demurrers were properly overruled.

Judgment affirmed.