## Greene, Auditor Public Accounts v. National Surety Company.

(Decided December 19, 1919.)

### Appeal from Franklin Circuit Court.

1. Taxation—Surety Company is Insurance Company.—A surety company is an insurance company within the meaning of section 4229, Kentucky Statutes, and required to pay the premium tax of two dollars on the hundred named in that section.
2. Taxation—Corporate Franchise, License or Occupation Tax.—The mere fact that a corporation is required under section 4077, Kentucky Statutes, to pay a franchise tax, does not relieve it of paying a license or occupation tax.

CHAS. H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellant.

BASKIN & VAUGHN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The National Surety Company is a foreign corporation engaged in the business of writing guaranty and burglary insurance in the state of Kentucky. It complied with the law of this state, satisfied the Commissioner of Insurance of its compliance, and began business in this state some ten years before the commencement of this action. From that time on it was assessed and paid a franchise tax under section 4077, Kentucky Statutes, and for each of said years it was also assessed and paid a license tax, or tax on its premiums, under sec-

tion 4229, Kentucky Statutes. In November, 1918, it reached the conclusion that it was not liable for the license tax under section 4229, and demanded of Auditor Greene that he issue his warrants upon the treasury of Kentucky for several sums paid by the company for five years back, with interest, and the auditor declining so to do, the company instituted this action seeking a mandamus against Auditor Greene to compel him to issue five separate warrants for the sums paid by the company as license tax, under section 4229, for the years 1914, 1915, 1916, 1917 and 1918, amounting in the aggregate to $4,201.10, and interest. An agreed stipulation of facts was filed as a supplement to and considered a part of the petition. To the petition the auditor filed a general demurrer, which the court, after consideration, overruled, and the auditor, declining to further plead, judgment was entered ordering and directing Robt. L. Greene, as Auditor of Public Accounts for the Commonwealth of Kentucky, to draw a warrant for the sum of $1,051.16, with legal interest thereon from March 5, 1917, and another warrant for the further sum of $990.10, with legal interest thereon from April 11, 1918, in favor of the plaintiff, National Surety Company. It was also adjudged its cost. These sums are the amounts paid into the treasury by the company for the years 1917 and 1918. The petition was dismissed without prejudice as to the amounts paid for the years 1914, 1915 and 1916, for some reason not appearing in the record, but probably because no demand for the return of the money was made on the auditor within the time prescribed by statute.

From this judgment the auditor appeals.

It is the contention of the surety company that section 4229, Kentucky Statutes, does not apply to it, because it is a guaranty and surety company only and not an insurance company within the meaning of the statute; while the auditor contends that the surety company is an insurance company within such meaning and liable to the premium tax prescribed by said section. It is admitted by the company that if it is an insurance company within the meaning of said section, then it is liable to said tax and not entitled to the mandamus sought in this case, nor to recover the money paid as premium tax. It relies upon the opinion of this court in the cases of the Aetna Life Insurance Co., &c. v. Coulter, Auditor, 115 Ky., 787,

and the Fidelity & Casualty Company of New York, &c. v. Coulter, Auditor, 115 Ky. 805. In the first case to which we refer the Aetna Life Insurance Company and other similar companies, all old line life companies, sought to avoid the franchise tax required by section 4077, and this court, after carefully considering the matter, came to the conclusion that as said section specifically named railroad companies, guarantee and surety companies, gas companies, and a number of other corporations and companies which were liable to the franchise tax, but omitted "life insurance companies," it did so for a reason and not by oversight. Another reason assigned is that a life insurance company does not have or exercise any exclusive privilege or franchise not allowed by law to natural persons, and therefore is not liable to the franchise tax imposed by section 4077. In the course of the opinion, however, it is said:

"An insurance company is not a guaranty or security company within the ordinary meaning of that term. . . . An insurance company is not like a guaranty or surety company. It exercises no special or exclusive privilege not allowed by law to natural persons. At common law private persons can make contracts of insurance."

In the second case referred to the Fidelity & Casualty Company was also attempting to avoid a franchise tax under section 4077, Kentucky Statutes, and this court, in discussing the question, said:

"The company that is only doing a guaranty or security business is not an insurance company within the meaning of the statutes imposing a tax of $2.00 on each $100.00 of gross premiums, and if such a company has paid this tax and is now assessed for a franchise tax, it will be entitled to a credit on the latter tax for the amount which it has heretofore paid in the way of the tax on gross premiums, if such is the fact."

This statement was beside the question—mere *obiter dictum*. The question was as to the liability of the company for a franchise tax and not whether it was liable for a license or premium tax. The court was not called upon at that time to decide whether the Fidelity & Casualty Company was liable to the premium tax provided by section 4229, and the question not being presented for decision, the collateral statement of the court, inadvertently

thrown in, completely out of harmony with the prevailing rule of courts generally throughout this country, is not to be regarded as controlling when the exact question is presented.

All text writers and courts with few exceptions class guaranty and surety companies as insurance companies, and the business of guaranteeing and assuring as insurance. Obviously this is a correct classification. No matter whether a company engages in the business of insuring against loss by fire or loss by fraud, theft, or infidelity, it is equally engaged in insurance. The word "insurance" covers and includes a number of associated and related branches—life, marine, health and accident, guaranty and surety, wind, hail, etc., all properly gathered under the generic term insurance. Our statutes, section 641, specifically declares what companies shall be held to be insurance companies. It reads:

"The words 'insurance company' or 'insurance corporation,' as used in this article, shall be held to mean and include any association, individual, company, corporation, partnership, or joint stock company, engaged in, or carrying on in any manner the business of insurance in this state."

Chapter 32 of our statutes relates to corporations, and article 4 of this chapter is devoted to the organization, incorporation and admission to do business in this state of domestic insurance companies. This same article provides how foreign insurance companies engaged in insurance other than life, may be admitted to do business in Kentucky. Article 4 begins with the caption "insurance;" the second subdivision of this article relates to "life insurance;" the third subdivision of this article is devoted to assessment or co-operative life insurance, but the 4th subdivision deals with insurance other than life. This subdivision provides: "Any number of persons, not less than thirteen, may associate to form an insurance company for any other purpose than life insurance." Section 687 of the statutes covers the subjects of risks —character that may be taken—deposits with treasurer —reports—limit of risk—liability of officers for exceeding limit. The section in part reads: "It shall be lawful for any company organized under this law: . . . (2) to guarantee the fidelity of persons holding places of trust, private and public, and to act as surety on official

bonds, and for the performance of other obligations;
. . . (6) against loss by burglary or theft, or both."

This branch of insurance is divided into eight subdivisions by the statutes, including the two foregoing. The caption of the statute is "Corporations—Private. Insurance other than Life."

It will thus be seen that our legislative body has placed the business of guaranty and surety companies under the general subject of "insurance" in our statutes, and constantly refers to such contracts as "contracts of insurance," and has directly defined such contracts and undertakings as insurance, and such companies as engage in that line of business as insurance companies. This court in considering cases involving guaranty and surety contracts has often referred to them as "contracts of insurance." For instance, in the case of Champion Ice Mfg. & Cold Storage Co. v. American Bond & Trust Co., 115 Ky. 867, this court, in considering such a bonding company, said: "The appellee company is engaged in the business of furnishing bonds to secure the honesty and fidelity of fiduciaries and employes. . . . Its only purpose was to insure against loss that might result to appellant from fraud or dishonesty. . . . It will be observed that the bond in this case is a printed one—prepared, doubtless, by a skilled attorney in appellee's employ. The contract expressed therein is but a form of insurance, and the law of insurance is that, in the construction of policies, if there be any ambiguity in them, it must be construed most strongly against the insurance company."

Again in a case involving a bond or policy guaranteeing the fidelity of a bank employee, this court said: "This is a contract of insurance. For a consideration, the insurer guarantees the honesty of the employee during the period covered by the contract. Fidelity & Guaranty Co. of New York v. Western Bank, 29 R. 639, 94 S. W. 3.

In the case of Simms v. Commonwealth, 114 Ky. 628, contracts insuring the fidelity of employes were treated as contracts of insurance.

In an opinion by Judge Taft in the case of American Credit Indemnity Company v. Athens Woolen Mills, 92 Fed. 584, a contract of indemnity was under consideration and the court said: "These contracts of indemnity are merely contracts of insurance carefully framed to limit as nearly as possible the liability of the insurer, and

doubtful expressions in them are construed favorably to the insured.''

Again in the case of Shakman v. U. S. Credit System Co., 92 Wis. 366, a contract of indemnity was under consideration, and the court said: "We regard the contract before us as unquestionably a contract of insurance. . . . The contract being then a contract of insurance and the defendant's business being the making of such contracts, it follows that the defendant is an insurance corporation within the meaning of sections 1977 and 1978, Revised Statutes.''

In Frost on the Law of Guaranty Insurance, the text is: "Looked at from a purely legal standpoint, to what class of contracts does the instrument issued by the guaranty company in the form of an insurance bond or policy belong? Is it in fact, as well as in form, a contract of insurance? Further, even assuming it to be a contract of insurance, why should it be called 'guaranty insurance?' . . .

"That such policies are essentially insurance contracts has been settled by the overwhelming authorities of a large number of courts of last resort, the decisions to the contrary being few and far between.''

Joyce on Insurance, vol. 1, sec. 339, says:

"This class (guaranty insurance) comprises fidelity, title, credit, bond and contract guarantees generally, and, after much discussion, it seems to be well settled that these contracts are essentially those of insurance.''

We are therefore forced to the conclusion that the National Surety Company and other companies engaged in guaranty and surety business are insurance companies within the meaning of section 4229, Kentucky Statutes.

Section 4229 is at the commencement of subdivision 4 of chapter 108, and has over it this caption: "Foreign insurance companies other than life. Statements to be filed by—tax—amount of.'' The section reads: "Every insurance company, other than life insurance companies, and all fire insurance companies, not organized under the laws of this state, but doing business therein, shall, on the 31st day of December in each year, or within thirty days thereafter, return to the Auditor of Public Accounts, for deposit in the insurance department, a statement under oath, of all premiums received in this state, or out of this state, on business done in this state during the year ending on the 31st day of December last preced-

ing or since the last returns were made, and shall give the name and location of and the amount of premiums received by each agent, and losses paid at each agency, and shall, at the same time, pay into the state treasury a tax of two dollars upon each one hundred dollars of said premiums so ascertained, less returned premiums on canceled policies and reinsurance in companies having authority to transact business in this state, and upon payment file a statement thereof with the Secretary of State.''

This statement and tax are required to be made and paid by every insurance company except those engaged in life insurance, and since our statutes classify guaranty and surety companies as insurance companies, such companies are liable to the premium tax provided in this section.

It is urged, however, that the legislature did not intend to include guaranty and surety companies in this section, because it specifically exempts life insurance companies, but we can not agree to this construction, because the statute specifically says: ''Every insurance company, except life insurance companies,'' and if it had been the desire of the lawmaking body to exclude other insurance companies, such as guaranty and surety companies, from the operation of this statute, exceptions would have been made. Just why life insurance companies were excepted from this provision it is not necessary to inquire, as it was in the power and province of the legislature to fix such license tax upon different branches of insurance as to it seemed right and proper.

It is said by counsel for appellee company that to hold guaranty and surety companies liable to the premium tax provided for by section 4229 would subject such companies to double taxation, and thus violate the constitutional provision which declares that ''all taxes shall be uniform.'' It is admitted that appellee company is subject to the franchise tax under section 4077, Kentucky Statutes, and it is asserted that this premium or license tax is upon the same fund which forms the basis and is subjected to the franchise tax, and if appellee company is subject to this premium tax, having already paid its franchise tax, it is twice taxed upon the same fund or property. In support of this argument, it is pointed out that by section 4077, which relates to franchise taxes, it is provided that

every railroad company or corporation, guaranty and surety company, gas company, etc.," and every other like company, corporation or association, also every other corporation, company or association, having or exercising any special or exclusive privilege not allowed by law to natural persons, or performing any public service, shall, in addition to the other tax imposed on it by law, annually pay a tax on its franchise to the state." And guaranty and security companies being specifically included in this statute must not be included in section 4229 by implication or construction. It is true that under the construction placed upon these two sections of the statutes, the guaranty and surety companies are subject to the franchise tax and to the license or premium tax, but this does not violate the constitutional provision referred to nor subject companies to double taxation in the meaning of the constitution. We have held in considering franchise tax that it is an *ad valorem* or property tax, and the correctness of this rule is manifest when we recur to the method employed in ascertaining and fixing the value of the franchise for the purpose of taxation. Bosworth, Auditor, v. Ky. Highland R. Co., 183 Ky. 749; Commonwealth v. U. S. Express Co., 149 Ky. 177.

A franchise tax is an *ad valorem* or property tax. City of Newport v. South Covington.& Cincinnati St. Ry. Co., 156 Ky. 403; James, Auditor v. Kentucky Refining Co., 132 Ky. 353.

A premium tax under sec. 4229 is inherently a license tax, or a tax upon the privilege to do business in Kentucky. It follows, therefore, that the franchise tax which is an *ad valorem* tax and the premium tax or license tax, are very different things, and do not amount to double taxation of a given fund or property.

We held, in the case of City of Newport v. South Covington & Cincinnati St. Ry. Co.; *supra,* a franchise tax is not a license or occupation tax, but an *ad valorem* or property tax. To give the statute any other construction would be to ignore its plain terms and to ascribe to the one exception made, an additional exception which does not appear in the text of the act. The National Surety Company and several other foreign insurance companies engaged in issuing contracts guaranteeing the fidelity and integrity of persons both in private and public trust, have been construing this section of the

statutes as here construed for years, and have paid the taxes in accordance with the view here expressed.

Our conclusion that appellee company was and is liable for the premium tax makes it unnecessary to consider the other questions made in brief of counsel.

Judgment reversed with directions to sustain the general demurrer to the petition and for further proceedings not inconsistent with this opinion.