## Ironton & Russell Bridge Co. v. City of Russell.

(Decided Dec. 20, 1935.)

(As Extended on Denial of Rehearing March 6, 1936.)

S. S .WILLIS, A. V. POLLOCK and A. R. JOHNSON for appellant.

JOHN T. DIEDERICH and WILLIAM T. SMITH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

The appellee and plaintiff below, city of Russell, is one of the fourth class in Greenup county, Ky., located on the Ohio river, opposite to which is the city of Ironton in the state of Ohio. The appellant and defendant below, the Ironton & Russell Bridge Company, owns a vehicular and pedestrian bridge across the Ohio river connecting those two cities, and which was constructed in the year 1921 and has continued to be operated by defendant since that time. In March, 1931, the proper governing authority of the plaintiff city proceeded, in accordance with section 3542 of Carroll's 1930 Edition of the Kentucky Statutes, to assess for city taxes that portion of defendant's bridge spanning the space between low-water mark on the Kentucky side to the center of the Ohio river, or to

the thread of that stream, for the years 1925 to and including 1930, upon the theory that the boundary of the corporate limits of the plaintiff city extended to that point in the river, and that defendant had not for any of those years assessed or paid taxes upon any part of its bridge beyond low-water mark on the Kentucky side, and that such portion thereof from thence to the now claimed boundary of plaintiff city to the thread of the stream was omitted property subject to assessment for city taxes. Later, and as this action progressed, similar assessments were made for the years 1931, 1932, and 1933, based upon the same ground. In each instance defendant was notified in writing of such assessment and payment of the taxes for each of those years was demanded (the amounts being set out in the notice for each year), but it declined to pay any part thereof upon the ground, as it contended, that the city limits of plaintiff terminated at low-water mark of the Ohio river on its Kentucky side and that such point was the extreme limit of the corporate boundary of plaintiff.

After such notification and refusal of the first assessment mentioned, plaintiff filed this action against defendant in the Greenup circuit court to recover from it the taxes claimed to be due on such alleged omitted property, with interest from the respective annual amounts from their due dates, and in the petition the facts we have stated were averred. Defendant's demurrer, filed to the petition was overruled, and in the first paragraph of the answer it denied the material averments of the petition. In another one it denied the right of the city council to make the assessments, conceding that the limits of the plaintiff city extended to the point contended for by it. Another one relied on the statute of limitations in bar of the right to assess for taxation any of defendant's property for taxing purposes for the years 1925 and 1926 which, under the section of the statute supra, is five years. A final one pleaded a counterclaim or offset amounting to $6,328.60, which aggregate sum it mistakenly and erroneously paid to the city (plaintiff) for the years 1923 to and including 1927 as its taxable portion of the valuation of defendant's franchise property, and which had been assessed for those years by the State Tax Commission, or its predecessor agencies for that purpose,

under the provisions of section 4077 et seq. of Carroll's Ky. Statutes, supra. The amount of the valuation of the franchise property of defendant for each of those years upon which defendant had the right to collect taxes is required by the sections of the statute referred to, to be certified to the various municipalities in which any portion of such property is located by the state assessing agency. But in the years mentioned that body mistakenly certified that plaintiff, city of Russell, had the right to collect taxes on defendant's entire frachise property within the commonwealth of Kentucky, and which included that proportion of its physical properties within the state up to low-water mark on the Ohio shore, since that point was the boundary of Kentucky under what is commonly known as the "Virginia Grant." Defendant paid taxes on such certifications for the years mentioned, and in its answer relying upon such offset credit it contended that all of such assessments that it had paid, and which should be allocated to that part of its physical bridge beyond low-water mark on the Kentucky side of the river, was erroneously made by it and erroneously collected by plaintiff by oversight and mistake of both parties, and for which reason it should have credit for such excess payments on any assessment of the physical bridge that might eventually be made in this case.

There was another paragraph of the answer pleading an estoppel against plaintiff's right to maintain this action, and which was based upon the adjudications contained in the cases of Gilley v. City of Russell, 212 Ky. 798, 280 S. W. 101, and City of Russell v. Ironton-Russell Bridge Company, 249 Ky. 307, 60 S. W. (2d) 628. They involved the right of the city of Russell to annex territory lying outside of its true and correct river boundary so as to extend its charter limits to the north shore of the Ohio river corresponding with the north line of the commonwealth, and it was claimed in support of this paragraph of the answer that plaintiff was estopped to contend in this action that its charter boundary extends beyond low-water mark on the Kentucky shore because of certain allegations in the pleadings in those cases, and because of some adjudications therein, none of which fixed the river boundary.

The court sustained plaintiff's demurrers to all of the paragraphs of the answer except the first one, and the one relying upon the counterclaim or offset, and as to them the demurrer was overruled. Plaintiff's reply interposed the five-year statute of limitations against defendant's right to its pleaded offset, and it was affirmatively alleged that such items for which defendant sought credit were taxes voluntarily paid by it and not under protest, and for which reason none of them could be recovered by it from the city, nor could it obtain credit by any of them, since to do so would be an indirect recovery of them contrary to our adopted rule disallowing such recovery of erroneous tax payment when voluntarily made. See Ziedman & Pollie, Inc., v. City of Ashland, 244 Ky. 279, 50 S. W. (2d) 557. In further avoidance of defendant's offset is the question not pressed in brief but raised by plaintiff's demurrer thereto, and which is, whether an offset may be relied on in defense of an action by a public taxing municipality to collect taxes due it? A reply and other following pleadings and motions made the issues, and upon final submission the court adjudged that the correct boundary of the plaintiff city was the thread of the Ohio river; that plaintiff was entitled to collect taxes on defendant's portion of the bridge from low-water mark on the Kentucky shore to the adjudged boundary beyond that point (to the thread of the Ohio river) for all of the years claimed, except 1925, which the court held the city was barred from doing by the five-year limitations prescribed in section 2515 of our Statutes, and it allowed defendant credit by the proportionate part of the franchise taxes that it had theretofore paid which should be allocated to that portion of its physical bridge lying beyond the thread of the stream of the Ohio river to low-water mark on the Ohio shore as having been paid by oversight and mistake, and which amounts covered the entire period claimed in the answer, i. e., the years 1923 to and including 1927, thereby overruling plaintiff's plea of limitations to each and all of such payments as well as sustaining defendant's right to invoke that defense. From that judgment defendant prosecutes this appeal, and from so much thereof as disallowed plaintiff's defense interposed to the offset it has been granted a cross-appeal in this court.

Taking up first that part of the judgment appealed from locating the line of plaintiff's charter boundary at and along the thread of the stream of the Ohio river, we are clearly of the opinion that the court was correct in such determination. The question was thoroughly gone into by us in the recent case of City of Covington v. State Tax Commission, 231 Ky. 606, 21 S. W. (2d) 1010. A great number of cases, as well as texts are cited in that opinion in support of the reasoning employed and the conclusion reached therein. That case involved the correct location of the north corporate limits of the city of Covington, and we held that under the description of its charter boundary, such north line extended to the thread of the Ohio river. The principle of law which we approved and applied in that case was that when a boundary line runs to a point on a physical boundary line (such as a road, a street, or a stream) and the description of the line along such physical boundary side says, "thence up said road," or street, or stream, or down it, to another point on the same physical boundary line there will be a presumption in the absence of anything in the description indicating a contrary intention, that the line of the owner, if a private individual, or a charter boundary, if an incorporated municipality, will extend to the center or thread of such physical boundary. Authorities from the courts throughout the country are collected in the opinion referred to as well as many prior cases from this court, some of which are listed on pages 612 and 613 of 231 Ky., and on pages 1012 and 1013 of 21 S. W. (2d) of that opinion. We deem it unnecessary to repeat the reasoning employed in that opinion or to again list the various and multiplied authorities in support of it. It was also pointed out in that opinion that the same rule would apply in locating the boundary of a municipality as in locating the boundary line of a private owner of real estate. A later opinion approving in all respects the city of Covington one was rendered by us in the case of Baxter v. Davis, 252 Ky. 525, 67 S. W. (2d) 678.

The city of Russell was incorporated by a private statute, being chapter 591 of the Acts of the General Assembly of 1873 and 1874. The beginning point was at the mouth of a named creek "on the Ohio River." It runs thence away from the river; thence to Bear Run creek; thence down the meanderings of same (Bear

Run creek) to the Ohio river; thence down the Ohio river to the place of beginning. That description completely fits the facts in the City of Covington Case, supra, and there is nothing in the description of the charter indicating any intention to circumvent the application of the rule supra, and to confine the limits of the city of Russell to low-water mark on the Kentucky shore. We therefore conclude, without further encumbering this opinion, and without further taxing ourselves, that the court correctly held the line of the corporate limits of the city of Russell to extend to the thread of the Ohio river, and which had the effect to locate within plaintiff's city limits that part of defendant's physical bridge from low-water mark on the Kentucky side of the river out to that located point. We further conclude that such determination had the effect to render all of such portion of defendant's bridge lying beyond low-water mark on the Kentucky shore to the thread of the Ohio river as omitted property for the years involved, and which was property assessable by the city council of Russell in the manner it did, under the authority conferred upon it by section 3542 of our Statutes, supra.

But it is insisted by defendant that the court improperly rendered judgment against it for the taxes for the year 1926, since, as it contends, its plea of limitations should have been sustained thereto. But we do not so construe the record. The assessment that plaintiff's legislative council made for that year was due to be made by defendant as of April 1 of the year 1926. See section 3535 of our Statutes, supra. The assessment made by the city council was made in March, 1931, less than five years from that date, and which authorized the court to include the taxes for that year in its judgment. Since, therefore, the court did not render judgment for any assessment that was barred by limitations, and, as we have concluded, the city proceeded in a proper manner to make the involved assessments as omitted property and to proceed by this action to collect the taxes arising from such assessments after notice thereof given to defendant and its refusal to pay, and since the judgments in the cases supra reported in 212 Kentucky and 249 Kentucky do not, as we also conclude, constitute an estoppel against the city in this case it follows that no cause has been

shown authorizing us to disturb the judgment against defendant of which it complains on this appeal by it.

The questions involved on the cross-appeal, as hereinbefore pointed out, are: (a) Whether or not the court erred in failing to sustain plaintiff's plea of limitations thereto, or to any part of it; (b) whether or not defendant's payment of the offset items interposed by it as a pro tanto defense to plaintiff's recovery herein was made voluntarily and in such circumstances as would deprive it of the right to subsequently recover the amount so paid under the rule laid down in the Ziedman, etc., Case, supra (244 Ky. 279, 50 S. W. [2d] 557); and (c) whether or not defendant's relied on offset is available to it at all in this character of proceedings by the municipality of the city of Russell against it to collect past-due and unpaid taxes? To a consideration of them we will now briefly direct our attention.

Manifestly, defendant's cause of action, if it possessed any, to recover from the city any of the alleged wrongfully and erroneously paid taxes making up its total offset claim accrued immediately following the payment of each of them and unless it took the proper procedure to assert its right to such recovery within the limitations period of five years in which it might be done, the bar accrued and became available to the city in any subsequent action to assert the right. In paragraph V of defendant's answer it expressly stated that it paid such items of franchise taxes to plaintiff on the 31st day of December in each of the years 1923 to and including 1927. After the elapse of five years from those payment dates, defendant's right in any event to recover the sum so paid became barred by the limitations period applicable thereto. The defensive pleading of defendant herein, in which the right of recoupment of such erroneously paid taxes was asserted, was filed on July 15, 1931, and as a consequence such payments relied on in the paragraph, asserting an offset by defendant, were barred unless they had been paid within five years prior to that date. Only two of them were paid within that prior period and which were the amounts represented by the erroneous payment made in 1926, and the one made in 1927, and which are the only amounts of the offset claim that the court in any event should have allowed defendant as a credit on the amount adjudged against it.

The objection to defendant's pleaded offset embodied in question (b), supra, would also seem to be well taken, since the payment by defendant of the taxes on its franchise property allocated to that part of its bridge lying north of the thread of the Ohio river was voluntarily done, and was not superinduced by any sort of duress so as to characterize them as in any wise having been made involuntarily.

But, independently of either question (a) or (b), supra, and putting them entirely aside, we are yet of the opinion that question (c), supra, should be given a negative answer, and constitutes an absolute defense to the interposed offset by defendant. The text in section 1336, volume 3, fourth edition of Cooley on Taxation, says: "Unless by express provision of statute set-off is not allowed in suits for taxes. So illegal or excessive taxes paid in previous years cannot be set-off against current tax demands. Any agreement between tax officers and a tax-payer that a pre-existing claim may be set-off against taxes is of no effect, at least where the tax officers have no power to make such an agreement."

To the same effect is the text in 61 C. J. 1058, sec. 1391, which says: "The general rule is that a set-off or counter-claim can not be interposed in an action for the recovery of delinquent taxes." The same rule is expressed in the text of 26 R. C. L. sec. 337, thus: "It is well settled that no right exists in law or equity to set off against taxes a debt of equal amount due to the taxpayer from the municipality to which the tax is payable. Taxes are levied to raise money for specific purposes, as indicated by the appropriations of the current year, and a taxpayer cannot, by exercising the right of set-off, divert the taxes to another purpose, namely, the payment of the debt due to him. The strictness with which the rule is applied is seen in the cases which hold that illegal or excessive taxes paid in previous years cannot be offset against current tax demands."

The Court of Appeals of the State of New York, in the case of Village of Charlotte v. Keon, 207 N. Y. 346, 100 N. E. 1116, 46 L. R. A. (N. S.) 135, Ann. Cas. 1914C, 338, approves the same sweeping statement as to the applicable law denying the right, and in a note

appended thereto in the Annotated Case volume, opinions of federal court, and of more than twenty-five state Supreme Courts upholding the same principle are listed, including those from this court of Newport & Cincinnati Bridge Co. v. Douglass, 12 Bush, 673; Anderson v. City of Mayfield, 93 Ky. 230, 19 S. W. 598, 14 Ky. Law Rep. 370; and Somerset v. Somerset Banking Company, 109 Ky. 549, 60 S. W. 5, 22 Ky. Law Rep. 1129. Every one of those cited opinions, including the domestic ones, are in complete accord with the comprehensive statement of the cited texts. The reason given for its approval and enforcement in all of those opinions, in the icted texts and the annotation supra, is the same as is set forth by Judge Lindsay who rendered the opinion in the 12 Bush case, supra, and which is: "The state acts in its sovereign character; and where it finds it necessary or convenient to resort to the courts to enforce the performance of the public duty, or the satisfaction of the public burden resting on the tax-payer, it can not be met and defeated by an ordinary plea of set-off. This public duty is absolute and imperative. The tax is not a mere debt due from the citizen to the government, and the courts have no power to treat it as a debt without the exrpess sanction of the legislature."

That reason needs no defense. It is so patently sound, as well as necessary, that the mere statement of it is self-convincing. We have been unable to find, after a most painstaking search, any judicial utterance to the contrary, except our domestic opinion in the case of Louisville & N. R. Co. v. Commonwealth, 30 S. W. 624, 625, 17 Ky. Law Rep. 136, and the later case of Board of Drainage Commissioners, etc. v. Graves County, 209 Ky. 193, 272 S. W. 387. The first one was a proceeding by the commonwealth for the use and benefit of the city of Lebanon to collect past-due and unpaid municipal taxes from the Louisville & Nashville Railroad Company. The opinion makes no reference to any offset defense, but it does discuss and dispose of other defenses, and in its closing paragraph is found this statement: "It seems to us that the company is entitled to plead as a set-off, and have credit for, any excess of taxes it has heretofore paid by mistake." We obtained the record in that case and learned from it that there was pleaded an offset item of $60.50 consist-

ing of erroneously paid taxes to the municipality of Lebanon by defendant therein in prior years, and which condition of the record (but which is not shown by the opinion) would appear to bring the inserted statement therefrom within direct conflict with all of the other law upon the subject and to which, so far as our research goes, there had been up to that date no dissent by any court, nor has there been any since the rendition of that opinion save and except to the extent that our 209 Kentucky opinion, supra, may have done so.

That case (209 Ky.) dealt with a somewhat different question, arising from the difference in its facts from the one involved in the instant case, and also from the one involved in the 17 Ky. Law Rep. case. The record therein involved the right of Graves county to offset, in a proceeding against it by the Drainage Commission, an amount that the county had paid for bridging a ditch that the Drainage Commission had dug, the action being to recover from the county its pro rata part of the fund to be collected for the purpose of building such bridges; and, inasmuch as Graves county had paid that amount in accomplishing the special purpose for which the taxes sought to be collected of it was to be spent, the pleaded offset was allowed. In the course of the opinion the conclusion was attempted to be fortified by citing our 17 Ky. Law Rep. opinion. However, Judge Clark, in writing the later opinion expressly recognized the universal rule supra, and cited our opinions hereinbefore listed in support thereof, as well as Newman's Pleading and Practice, vol. 2, sec. 839. He then referred to the 17 Ky. Law Rep. opinion as a partial substantiation of the conclusions he reached; but before doing so he recited the reason upon which the rule disallowing the offset in such cases is based, and which is in strict conformity with the one hereinbefore inserted from the cited 12 Bush opinion.

In other words, to the extent that the 17 Ky. Law Rep. opinion was approved, Judge Clarke in the last opinion merely referred to it without discussing its soundness or unsoundness, which was also the course adopted by Judge Lewis, who rendered the opinion in the 17 Ky. Law Rep. case. Clearly, the latter opinion (in 17 Ky. Law Rep.) was written without the court's attention being called to the universally approved and applied rule disallowing offset defenses

in such cases, and which is made apparent when the briefs in that case are examined. It is so clearly out of line, and approves a principle that might prove so disastrous to the conduct of governmental affairs and the execution of governmental functions, that we think it should no longer be recognized and it is now expressly overruled.

It will be noticed that the rule disallowing such defenses applies with equal force when the offset claim consists of previously paid *taxes* as it does when the claim arises upon *contracts,* or of judgments based on torts, or judgments on other unliquidated claims, and which is logically sustainable, since the claim of a taxpayer against the taxing authority, when allowable at all, arises exclusively upon an implied contract by the taxing authority to reimburse the taxpayer for such erroneous and invalid payments and is, therefore, after all, nothing more nor less than an obligation · arising upon contract. Any effort to distinguish such a claim from one otherwise created is clearly unsustainable, since the argument in support thereof is essentially fallacious. Our last opinion (209 Ky., supra) being based upon an entirely different state of facts need not for the purposes of this opinion be modified except to the extent that it approved the 17 Ky. Law Rep. one, and to that extent it is also overruled. It, therefore, follows that the court erred in allowing defendant credit for any part of its interposed offset.

But it is vigorously argued that the court erred in sustaining plaintiff's demurrer to the second paragraph of defendant's answer relying upon the want of authority in the city of Russell to make the assessment herein sought to be enforced; it being contended by defendant that the only authority possessing the right to assess its *tangible* property was the state tax commission, and for it to certify the proportionate part thereof having a situs within the corporate limits of the city of Russell for local taxation. From that premise counsel urges that, since that method of assessment of defendant's tangible property (it being the only class involved in this litigation) was not pursued, plaintiff has no right to base this action upon an assessment made by it pursuant to the provisions of section 3542 of the 1930 Edition of Carroll's Kentucky Statutes. That section is a part of the charter of

fourth-class cities, to which plaintiff belongs, and it prescribes, inter alia, that: "If, for any reason, any property subject to taxation has not been listed, the counsel [legislative department] may assess same," etc. Unless, therefore, some other statutory provision provides otherwise as to the character of property involved, the assessments made by the legislative body of the city of Russell in this case were and are valid, and in that event the order of court sustaining the demurrer to the paragraph of the answer under consideration was proper.

But counsel says that section 4077 et seq. of the same statute, and section 4114i-11, prescribe a different method for assessing the character of property here involved by requiring that the assessment be made by the state tax commission, which shall certify the proportionate part thereof upon which counties and municipalities may collect taxes, and in support of that contention the cases of Asher v. City of Pineville, 140 Ky. 670, 131 S. W. 512; City of Newport v. South Covington & Cincinnati St. Railroad Company, 156 Ky. 403, 161 S. W. 222; and City of Covington v. State Tax Commission, 231 Ky. 606, 21 S. W. (2d) 1010, are relied on. We have closely read each of them, with others from this court, and found that the three cited ones are wholly inapplicable to the facts of this case, and the same is true with reference to the other uncited cases analogous to the three relied on, and which is made clearly apparent, not only from a reading of those opinions, but also from a consideration of the cited and relied on statutes. Section 4077 et seq. relate exclusively to the assessment of *intangible* (or franchise) valuations upon which certain corporations are required to pay ad valorem taxes, and those sections prescribe for the assessment of such *intangible* property alone—none of which is involved in this case. In none of those sections is there any intimation whatever of an intention to confer power and authority upon the state tax commission to assess tangible property belonging to the character of corporations therein dealt with.

The other section relied on (4114i-11) does authorize the state tax commission to assess the tangible property of the character of corporation therein referred to, and to which *alone* that statute relates. As therein

listed, they are: "Railroad lines in whole or in part in this State; railroad bridge companies owning or operating bridges spanning rivers constituting the boundary of this State; telegraph companies; express companies; pipe line companies whether operated as public or private carrier; telephone companies when operating and having exchanges or toll lines in more than three counties of the State; street railway companies, when owning or operating lines in two or more counties; and electric power companies; electric light companies, and gas companies owning or operating plants, service or transmission lines in two or more counties, with wires and poles." A casual reading only of that language demonstrates that defendant and appellant herein is not embraced in that classification of corporations, and as a consequence the cases cited and relied on recognize the right of local taxing authorities to itself assess the *tangible* property of the character of corporation as is defendant within its corporate limits. We, therefore, repeat that the principle contended for is not only unsupported by the cases relied on by counsel, but, on the contrary, it seems to be adversely disposed of by them, except as to the Asher opinion, which does not touch the question the one way or the other. The corporations involved in the cases upon which counsel rely were those embraced by the language of section 4114i-11, and it was correctly held that the assessment of their tangible property should be made by the state tax commission.

Lastly, it is contended that the court erred in adjudging interest on the involved assessments from the time they were made and payment demanded, but which is, according to our conclusion, adversely determined in the case of Bingham's Adm'r v. Commonwealth, 199 Ky. 402, 251 S. W. 936.

Wherefore, the judgment is affirmed on the original appeal, and on the cross-appeal it is reversed, with directions to set it aside and render one in conformity with this opinion.

The whole court sitting.