## Friedman v. Friedman.

May 14, 1948.

Herman Cohen for appellant.

James W. Stites and Joseph J. Kaplan for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

In a suit for divorce brought by Sylvia Friedman against Charles Friedman, the parties agreed upon a

settlement of property rights and allowances to the wife for herself and $150 a month for the maintenance of their children. The agreement was incorporated in the judgment awarding her a divorce. Within the term, the plaintiff, through another attorney, moved the court to set aside so much of the judgment as related to the property settlement on the grounds that her execution of the agreement had been procured through fraud, misrepresentation and undue influence on the part of the defendant. After hearing considerable evidence on the motion, the chancellor overruled it and the plaintiff prosecutes this appeal from that order.

The question is raised as to the order being appealable. The appellee relies especially on Safety Motor Coach Company v. Madden's Adm'x, 266 Ky. 459, 99 S. W. 2d 183. That was a tort action and an order overruling a motion to set aside the judgment for the plaintiff was held not one from which an appeal could be maintained. The motion was equivalent to a motion for a new trial, and it is the settled law that an order overruling such a motion is not within the terms of Section 734, Civil Code of Practice, the remedy being an appeal from the judgment sought to be vacated. But in James v. Carter, 274 Ky. 273, 118 S. W. 2d 558, where the court had refused to set aside a default judgment, we held that such an order was appealable, for the error, if any, was contained in that last judgment.

The judgment in this case was not appealable, for a judgment entered by agreement or consent of the parties leaves nothing in controversy. Bosworth v. Kentucky Highlands Railroad Company, 183 Ky. 749, 210 S. W. 671; Staverson v. Kentucky Utilities Company, 216 Ky. 309, 287 S. W. 890. But an agreed judgment can be vacated for fraud. Myers v. Myers, 266 Ky. 831, 100 S. W. 2d 693; Harrel v. Yonts, 271 Ky. 783, 113 S. W. 2d 426. If the court refuses to vacate the judgment upon that ground when a motion has been seasonably made, the only remedy of the party attacking it, other than under Section 518, Civil Code of Practice, is by an appeal from that order. It terminates the litigation and is, therefore, a final judgment. Keach v. Keach, 217 Ky. 723, 290 S. W. 708. We speak of that part of the judgment in this case as it relates to the rights and allowances of the wife, for the matter of custody and

allowances for the maintenance of the children continues open for reconsideration as changing conditions may justify. Keith v. Keith, 270 Ky. 655, 110 S. W. 2d 424, 425. In the latter case, we took jurisdiction and considered an order overruling a former wife's motion to set aside a consent judgment as it affected her rights. It is to be noted that in Littleton v. Littleton, 295 Ky. 720, 175 S. W. 502, we overruled the Keith Case only with respect to the sufficiency of the amount involved to authorize an appeal. Therefore, the order overruling the plaintiff's motion to set aside the agreed judgment is appealable.

The extensive evidence relates primarily to estimates of values of the husband's property and estate rather than to any concealment of ownership. The same is true as to his income. His income tax reports for several years were introduced and they do not sustain the appellant's contentions that there was any material concealment in respect thereto.

It is shown that the appellee's father, Joe Friedman, is a wealthy man and had been much concerned over the marital troubles in his family. He earnestly desired that the court action should be kept at a minimum and without embarrassment to any of the parties. He was sympathetic with Mrs. Friedman and devoted to his grandchildren, twin girls, now seven years of age. Mrs. Friedman had complete confidence in him and his advice. A large part of her present complaint is that in the effort to procure a settlement of the property rights and allowances, she submitted to her father-in-law, at his request, a detailed memorandum of her necessary living expenses. They aggregated $241.00 a month. Mr. Friedman stated that he wanted her and the children taken care of, and that he would see to it that she received that sum each month; that he would make up the difference between what she might receive from her husband and that amount. He also promised to furnish her a home or apartment. He urged her to go ahead and agree and to sign whatever proposition might be offered her because of his assurances. This is the gist of the conversations and commitments. Mrs. Friedman has some corroboration other than as to the amount guaranteed by her father-in-law. She had such confidence in him that she declined her attorney's sugges-

tion that the promise should be reduced to writing. She executed the agreement in reliance upon those promises.

Joe Friedman admitted the conversations and his concern over the situation and for his daughter-in-law and grandchildren. He agreed that Mrs. Friedman had submitted a list to him of her necessary expenses, but denied having made any definite representation or promise. Mrs. Friedman admits that she had never asked her father-in-law to pay her the sum stipulated or any part of it. The important point is that there is nothing in the record to show that Charles Friedman was a party to this outside agreement or knew anything about it. There is no showing of any agency of the father or connection of the appellee with this commitment. That was and is a matter and controversy separate and distinct from that involved in this case.

In the negotiations for the agreement, Mrs. Friedman was represented by a competent and astute lawyer, and also had the benefit of counsel and advice of another attorney of like character. It was not reached suddenly or under impulse, for the negotiations covered several weeks. It appears that all the various factors were considered, including the possibility of inheritance. This is not a case where a helpless woman was alone dealing for herself, or one in which snap action was taken. It is a case in which the party was represented by counsel and the contract was executed after full negotiation and opportunity for investigation of the valuation of the husband's property, and all other elements entering into the transaction. The amount allowed to the wife does not appear to be disproportionate to the value of the husband's estate at the time.

The case is distinguishable from Clark v. Clark, 301 Ky. 682, 192 S. W. 2d 968. In that case the chancellor denied the husband a divorce and refused to approve a contract settling the claims of the wife because it appeared that she had been deceived and overreached. She did not have any counsel, and, so far as the record shows, any other advice or aid in the negotiations. Moreover, that agreement was somewhat tentative and did not have the stability or strength of a judgment.

We think the chancellor's ruling was correct.

The judgment is affirmed.